62 N.J. Super. 243 (1960)
162 A.2d 603
WALTER SOGLIUZZO, APPELLANT,
v.
CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1960.
Decided July 5, 1960.
*244 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Max A. Boxer argued the cause for appellant.
Mr. E. Norman Wilson argued the cause for respondent City of Hoboken (Mr. Robert F. McAlevy, Jr., attorney; Mr. E. Norman Wilson, of counsel).
Mr. William L. Boyan, Deputy Attorney General, argued the cause for respondent Department of Civil Service of the State of New Jersey (Mr. David D. Furman, Attorney *245 General of New Jersey; Mr. William L. Boyan, Deputy Attorney General, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
Appellant, a patrolman, seeks the reversal of a decision of the Civil Service Commission dismissing an appeal by which he sought to set aside the action of the Director of the Department of Public Safety of Hoboken "in passing over his name for immediate appointment" as sergeant of police. He contends that he was entitled to an appointment, effective March 19, 1959, because he was twelfth on the list of men certified by the Department of Civil Service as eligible for the position and that one Joseph Marotta, who was fourteenth on the list, was selected improperly in his place. The Commission, after a hearing, upheld the director's action.
At the hearing it was stipulated that:
"* * * City of Hoboken was and is operating under the so-called Faulkner Act, Law of 1950, Chap. 210, N.J.S.A. revised statutes 40:69A-1, etc.
* * * the members of the Hoboken Police Department, at all times pertinent to this case, were under the protection of the Civil Service Law of New Jersey;
* * * Arthur Marotta was and is the Director of Public Safety of the City of Hoboken and, as such, was the appointing authority."
With few exceptions, the facts which provoke the present controversy are not in dispute. As revealed by the record, appellant and Joseph Marotta, also a patrolman and a brother of the director Arthur Marotta, passed a promotional examination for the position of sergeant on the police force of Hoboken. Both men were honorably discharged war veterans. The list was "promulgated" March 15, 1956 and "expired" March 14, 1959.
On March 11, 1959, the Commission, in response to a letter delivered to it by Director Marotta the same day, sent to him a written certification of the names of the first 15 men on the list eligible for promotion to the rank of sergeant, *246 although under the terms of the applicable ordinance, which provided for 23 sergeants on the force, only 12 vacancies for the positions then existed. The director asked for 15 names because, as he testified before the Commission, there was "expectation of some retirements between March and September 1959."
On March 12, the director conferred with each patrolman "up for promotion." His conference with appellant took place on that day at about 1:00 P.M. He testified that at the conference he advised Sogliuzzo that the latter would be promoted but, as "the appropriation * * * was for only twenty-three" he (Sogliuzzo) would be held "in abeyance for a future date"; that appellant, responding "Well, you are the Director of Public Safety, * * * accepted the position with the understanding that he would go to work in September" 1959. Appellant concedes that the director told him at that interview that he "wouldn't go on active duty as a sergeant," but denies that any particular time for the assumption of those duties was specified. In greater detail he described the conference as follows:
"* * * I went into Director Marotta's office and told him I received the certification and I accepted the job as sergeant. I was told to sit down. He shook my hand and said, `Tomorrow morning I am going to swear you in as a sergeant. After all, blood is thicker than water. I am interested in my brother who is the fourteenth man on the list.' * * * I said, `That's right.' He said, `I am going to ask you, after the swearing in, to come up and sign a waiver waiting for potential retirements. On the first vacancy you will be made a sergeant.' I was stunned at that time. I just looked at the director and said to him, `You are the boss. You do what you want.'
Q. Then what happened? A. We talked for a while. I was just thinking. Then he said, `I will see you in the morning.' He shook my hand and I left.

* * * * * * * *
Q. That was prior to your being sworn in? A. That's right.
Q. After that conversation did you say to the director that you would not accept the appointment under those conditions? A. No, sir.
Q. You said nothing? A. I said nothing.
Q. That `you are the boss. Do what you want'? A. That's right."
*247 Later in the day on March 12, the director caused a letter to be delivered to each of the 15 men notifying them that they were promoted to the rank of sergeant and directing them to appear on March 13, 1959 to be "sworn in" at the city hall. The letter signed by the director and delivered to Sogliuzzo was as follows:
"This will officially notify you that you are promoted to the rank of Sergeant.
You are hereby instructed to appear at the City Council Chambers at City Hall, on March 13, 1959 at 12 noon sharp to be sworn in. * * *"
The 15 men appeared as directed; the oath was administered to all of them as a group and each signed the "oath book."
By letter dated March 19, addressed and delivered to the acting chief of the police department, the director formally advised him of the names of the 12 patrolmen who were promoted to the position of sergeant, effective that day. The twelfth name on the list was Joseph Marotta. A civil service form, designated CS-6, is the form used by the appointing authority to advise the Department of Civil Service of the disposition of its certifications pursuant to R.S. 11:22-18. All of the 15 patrolmen on the eligible list, except appellant, signed the CS-6 form. On March 24 the aforesaid form was presented to Sogliuzzo for his signature. It designated September 11, 1959 as the effective date of his appointment as sergeant and contained the following statement: "As per certification of March 11, 1959, funds will not be available until effective date as above (9/11/59). This is agreeable to Walter Sogliuzzo." Appellant refused to sign the form unless his lawyer approved it. The form was never executed by him. Patrolmen No. 13 and No. 15 on the list accepted the director's designation of September 11, 1959 as the effective date of their appointments. After appellant refused to sign the form, the Department of Civil Service was duly notified of the 12 appointments effective March 19, 1959 and the two effective *248 September 11, 1959, and the director, under date of March 26, 1959, advised the Department of Civil Service in writing as follows:
"Please be advised that I have not made permanent appointment of Patrolman Walter Sogliuzzo from your certification for Sergeant, dated March 11, 1959, due to the fact that the starting date of appointment which was to be September 11, 1959 was not agreeable to Patrolman Walter Sogliuzzo, who declined to sign the CS-6 Form on Tuesday, March 24, 1959 about 2 P.M., in the presence of Mr. James Lanzetti my Administrative Clerk."
In upholding the action of the director, the Commission determined in part as follows:
"Appellant (number 12) and numbers 13 and 14 were all honorably discharged veterans and under the law could not be passed over for a non-veteran under R.S. 11:27-6. However, the appointing authority was clearly entitled to make each appointment from a list of three. Having appointed the first eleven in succession the three eligibles for the twelfth vacancy were numbers 12, 13 and 14, all with equal veterans' standing.

* * * * * * * *
There can be no question in view of the above facts that Director Marotta acted properly in appointing the first eleven names on the certified eligible list for appointment March 19, 1959, from a list that was due to expire March 14, 1959. In making the twelfth appointment Director Marotta by law was entitled to a choice of three names. The next three names in order, appellant as number 12, 13 and Joseph Marotta as number 14 all had equal veteran's standing. Director Marotta's action was legally proper, therefore, in appointing the third of that eligible group to the twelfth immediate vacancy. His appointments of numbers 13 and 15 to future vacancies, September 11, 1959, in which these appointees acquiesced were not challenged and are not before this tribunal. By the same token appellant in electing to contest the immediate appointment of Marotta and not signing the required C.S. 6 form waived his rights to the September appointment as the eligible list expired March 14, 1959."
In passing on the propriety of the Commission's action, preliminarily we note the pertinent portions of the following Civil Service rules, duly adopted by the Civil Service Commission:

*249 "Rule 42. Certification of the names of eligibles for permanent competitive work.
* * * If more than one vacancy is to be filled, the number of names certified shall be two more than the number of vacancies. * * *

Rule 44. Appointment, notice and beginning work.
* * * In promotion appointments the appointing authority may appoint any one of the three whose names have been certified for a single appointment, but if the name of a veteran stands first in any certification for any promotion appointment of a non-veteran may not be appointed. * * *"
In challenging the action of the Civil Service Commission, appellant concedes, as stated in his brief, that under the applicable rule, "an appointing authority ordinarily has a choice of one out of three in appointments and promotions," but argues that such discretion is not absolute; that the promotion of Joseph Marotta in the case at bar was simply an act of nepotism and that merit and fitness of the appointee did not dictate the selection. The Commission found that the promotions effective March 19, 1959, were "legally proper and within his [the director's] power." This determination of the Commission, approving the action of the director as the appointing authority, should not on review be upset by us "in the absence of an affirmative showing that it was arbitrary, capricious or unreasonable, or not supported by the evidence, or that the Commission disregarded or failed to recognize the legislative policies enunciated in the Civil Service Act." Marro v. Civil Service Dept., 57 N.J. Super. 335, 346 (App. Div. 1959); Greco v. Smith, 40 N.J. Super. 182, 184-185 (App. Div. 1956).
The eligibility of Joseph Marotta for promotion to the sergeancy had been determined earlier by the Civil Service Department as the result of competitive examination. His eligibility cannot properly be challenged. The record is barren of any evidence assailing his ability or fitness to measure up to the responsibilities of the new position.
Within the limits defined by the aforesaid rules and the applicable statutes, N.J.S.A. 11:22-16 and R.S. 11:23-4, the director had the right to make the selection *250 of the twelfth patrolman for appointment to the sergeancy, effective March 19, 1959, by appointing any of the three whose names had been certified, i.e., No. 12 (Sogliuzzo), No. 13 (George Hove) or No. 14 (Joseph Marotta), all veterans. He chose Marotta. There is nothing in the applicable statutes or rules which renders nugatory the appointing authority's discretionary selection for promotion of a person already declared eligible, merely because that person is related to the appointing authority. Appellant relies heavily on the director's passing observation, in his aforesaid conversation with appellant, that "blood is thicker than water." This phrase cannot be used as a basis for declaring that a relative of the appointing authority, who is otherwise qualified, cannot be the selected appointee within the discretion vested in that authority. Specifically, it cannot be used in the instant case to void the selection of Joseph Marotta on the theory that the director in making the selection was not motivated by a variety of other sound reasons which he elected not to declare, or which he was under no duty to declare, to appellant.
We have examined the remaining points raised by appellant and find them without merit. The action of the Civil Service Commission is affirmed.