PROSECUTOR'S DETECTIVES AND INVESTIGATORS AS-
SOCIATION OF ESSEX COUNTY, THE CLERICAL AND
STENOGRAPHIC EMPLOYEES, ESSEX COUNTY PROSE-
CUTOR'S OFFICE, THE SUPERIOR AND COUNTY COURT
CLERKS ASSOCIATION, CLERKS ASSOCIATION OF
HUDSON COUNTY, PLAINTIFFS-RESPONDENTS, v. THE
HUDSON COUNTY BOARD OF CHOSEN FREEHOLDERS,
AND THE COUNTY OF ESSEX, DEFENDANTS-APPEL-
LANTS.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1974—Decided August 9, 1974.

34

Before Judges HANDLER, MEANOR and KOLE.

*Mr. Francis Patrick McQuade* argued the cause for appellant County of Essex.

*Mr. Philip J. Mylod* argued the cause for respondent Prosecutor's Detectives and Investigators Association of Essex County.

*Mr. James R. Zazzali* argued the cause for respondent Clerical and Stenographic Employees, Essex County Prosecutor's Office (*Messrs. Zazzali and Zazzali,* attorneys).

*Ms Erminie L. Conley,* Deputy Attorney General, argued the cause for the Civil Service Commission (*Mr. William F. Hyland,* Attorney General of New Jersey; *Mr. Stephen Skillman,* of counsel).

*Mr. Robert Emmet Murray* filed a brief for the Hudson County Board of Chosen Freeholders (*Mr. I. Mark Cohen* on the brief).

The opinion of the court was delivered by

KOLE, J. S. C., Temporarily Assigned. This appeal stems from a December 14, 1971 directive by the Chief Justice that all trial courts of this State, other than municipal courts, shall sit from 9:00 a.m. to 12:30 p.m. and from 1:30 p.m. to 4:00 p.m., effective January 31, 1972. Pursuant thereto, on December 22, 1971 the Essex County Prosecutor ordered his personnel to work from 8:30 a.m. to 4:00 p.m., constituting a one-half hour earlier starting time and an additional one-half hour a day, effective January 31, 1972. Similarly, on January 5, 1972 the assignment judge for Hudson County directed "all employees serving the Judiciary" to report to work at 8:30 a.m. rather than the usual 9:00 a.m. Both Essex and Hudson Counties refused to compensate the affected employees for the extension of the basic work day.

Appeals were taken to the Civil Service Commission by the Prosecutor's Detectives and Investigators Association of Essex County (hereafter "Detectives"), the clerical and stenographic employees of the Essex County Prosecutor's

office (hereafter "Clerical Employees"), and the Superior and County Clerks Association of Hudson County (hereafter "Hudson Court Clerks"). Their cases were heard and decided together by the Commission. The latter decided that the extended work day without additional compensation constituted a reduction without good cause, in violation of the Civil Service Law and, specifically, *N. J. S. A.* 11:22–38. Accordingly, the Commission directed the respective counties to compensate the affected employees on a prorated basis.

The counties appealed to this court and an order for consolidation was subsequently entered.[1] We reverse.

*N. J. S. A.* 11:22–38 reads in part:

> No officer, clerk or employee holding a position in the competitive class shall be removed, discharged, fined or reduced * * * until he has been furnished with a written statement of the reasons for such action by the appointing authority and been allowed a reasonable time to make answer thereto. A copy of the statement or reasons therefor and the answer thereto, with the action of the appointing authority, shall forthwith be furnished to the commission and entered upon its records, and shall also be entered on the records of the department or office in which the removed, discharged, fined or reduced person was or is employed. The officer, clerk or employee shall at once be notified, in writing, of the action taken on such charges and answer. The action of the appointing authority ordering or directing such removal, discharge, fine or reduction shall not take effect until approved by order of the commission * * *.

The issue before us requires the resolution of two somewhat interrelated questions: (1) Did the directives of the

---

[1] On September 6, 1973 the Hudson County Clerks and the Hudson County Freeholders signed a collective negotiating agreement providing for substantial salary increases. We assume that these increases were intended to compensate the Hudson Court Clerks for the increase in hours from the effective date of the assignment judge's order. On April 4, 1974 a stipulation of dismissal of the Hudson Court Clerks' action was entered on the condition, among other things, that (a) the dismissal did not moot the issues pending before the parties in the Appellate Division, and (b) the Hudson County Board of Chosen Freeholders agreed to be bound by this court's decision as to personnel (other than the court clerks) associated with the courts who are required to work the additional one-half hour.

Essex County Prosecutor and the Hudson County assignment judge, made for the purpose of implementing the Chief Justice's order, together with the refusal on the part of the respective boards of freeholders to grant additional compensation, constitute reductions without good cause under the statute? (2) What effect does the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A-1 *et seq.,* have on the propriety of the Commission's determination?

It is important to note the difference in circumstances of the three groups of employees at the time the respective directives went into operation. The Detectives Association had already been certified by the Public Employment Relations Commission as the exclusive representative for all county detectives and investigators of Essex (*N. J. S. A.* 34:13A-1 *et seq.*). In 1970 it entered into a written agreement with the County of Essex covering various terms and conditions of employment and providing that whenever there should appear to be a conflict between the terms of the agreement and the Civil Service Law, the terms of the latter shall prevail. The agreement further stated that no employee shall make any claim for overtime payments. Salary ranges were agreed upon; however, hours were not mentioned. By its terms the agreement was to terminate on March 31, 1972 or when a new agreement would be executed, whichever event would last occur.

The second category of employees, the Hudson Court Clerks, is also an association. However, it was not recognized as the negotiating representative with Hudson County until August 4, 1972, approximately six months after the effective date of the directive. Prior thereto the Superior and County Court Clerks of Hudson County had apparently not formed an employee organization for the purposes of collective negotiation. The agreement entered into on September 6, 1973 between the Hudson Court Clerks Association and Hudson County in effect recognizes the work day as beginning at 8:30 a.m. in order to enable the court to convene at 9:00 a.m. and states that there should be no

overtime before 4:00 p.m. As mentioned before, the somewhat substantial salary increases incorporated in that agreement were apparently intended by the parties to compensate the employees not only for the employment to occur pursuant to that agreement, but also for the extra one-half hour for the period involved in this appeal — namely, January 31, 1972 to January 1, 1973, the effective date of the contract.

The third group of employees instituted a class action on their own behalf. They are classified clerical and stenographic employees of the Essex County Prosecutor's Office and are not represented by a recognized negotiating association.

In reaching its decision the Commission relied upon this court's opinion in *Essex Council #1, N. J. Civ. Ser. Ass'n v. Gibson,* 118 *N. J. Super.* 583 (App. Div. 1972), rev'g 114 *N. J. Super.* 576 (Law Div. 1971). That case was a class action in lieu of prerogative writs by a group of municipal employees who were members of the classified civil service. Plaintiffs were a minority among the city's employees who for years had had a 30-hour work week while the prevailing work week for others was 35 hours. By letter the mayor directed that plaintiffs would in the future be required to work a 35-hour week. The defendant city disaffirmed any reliance upon a claim of economic emergency to justify the measure taken, and argued that the extension of the work week was proper with or without good cause. 114 *N. J. Super.* at 579. The Law Division, referring to the tenure provisions of the Civil Service Act and their purpose of protecting the classified civil servant from political control, personal favoritism and the threat of groundless demotions and reductions, found that the five-hour extension of the work day constituted a reduction without good cause and enjoined the enforcement of the order. On appeal that decision was reversed for the sole reason that the case should have first been brought before the Civil Service Commission. However, this court expressed an "inclination" to agree that

the increase in hours was a reduction repugnant to *N. J. S. A.* 11:22–38. It further found that "at least in the circumstances of this case," it did not see a conflict between the civil service statutes and the New Jersey Employer-Employee Relations Act, and that the civil service appellate remedy was available not only to single individuals, but to groups of employees similarly affected. 118 *N. J. Super.* at 585.

In contrast to *Essex Council #1, N. J. Civ. Serv. Ass'n, supra,* the extension of hours in the cases before us was not motivated by an arbitrary decision by the appointing authorities but was required to further the interests of judicial efficiency as reflected by the Chief Justice's directive issued pursuant to his constitutional responsibility. Moreover, at least with regard to the Detectives and Hudson Court Clerks, associations to represent the employees in collective negotiations had already been organized and recognized as the exclusive representative at the time the Civil Service Commission rendered its decision. This raises the question of whether the exercise of jurisdiction by the Commission as to the employees represented by the associations may in some fashion conflict with the legislative policy reflected in the Employer-Employee Relations Act.

We do not agree with Essex County that the extensions here involved should be viewed as overtime and, as such, noncompensable under the terms of the Detectives' written agreement. Although "overtime" is not a word of art and can have various meanings, it is reasonable to assume that the parties to the contract intended that term to refer to services rendered beyond regularly fixed working hours. See *Bay Ridge Operating Co. v. Aaron,* 334 *U. S.* 446, 68 *S. Ct.* 1186, 1197, 92 *L. Ed.* 1502 (1948); *Goodman v. Moss,* 43 *N. Y. S.* 2d 381, 385 (Sup. Ct. 1943), mod., 269 App. Div. 839, 56 *N. Y. S.* 2d 534 (App. Div. 1945). The one-half hour daily increases altered the regular work day and thus should not be deemed "overtime" under that agreement.

■ The Commission viewed the *Essex Council #1* case as having overruled *Tanis v. Passaic Cty.*, 126 *N. J. L.* 303 (E. & A. 1941), to the extent that the latter seemed to indicate that groups of employees, rather than an individual employee, may not seek relief before the Commission under *N. J. S. A.* 11:22–38. But there is no conflict between the two cases. *Tanis* does not preclude a group of classified employees who are "removed, discharged, fined or reduced" from using that statute. All that it held was that they must in fact be reduced in compensation without good cause or otherwise discriminated against before the Commission may act.

■ We hold, as to all of the employees involved in this consolidated appeal, that the Commission erroneously concluded that the extension of the work day without additional compensation constituted reductions without good cause under *N. J. S. A.* 11:22–38. Accordingly, it should not have ordered that additional compensation be paid therefor.

■ ■ The motivating force behind the civil service legislation was to secure broad tenure protection during good behavior for employees within its scope, and "to give protection against dismissal and other types of discrimination to those holding positions which the Legislature placed in the classified service." *Scancarella v. Dept. of Civil Service*, 24 *N. J. Super.* 65, 70 (App. Div. 1952). It also provides relief against arbitrary action by the public employer that deprives the employee of his rights under the Constitution and the Employer-Employee Relations Act. *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper*, 56 *N. J.* 579, 584–585 (1970). Generally its purposes "were to put positions in the classified service beyond political control, partisanship and personal favoritism in order to secure to the county the best public service." *Scancarella, supra; Campbell v. Dept. of Civil Service*, 39 *N. J.* 556, 583 (1963). The Civil Service Act should be construed liberally towards the attainment of this goal. *Mastrobattista v. Essex Cty. Park Comm'n*, 46 *N. J.* 138, 147 (1965).

Pursuant to the underlying rationale of tenure protection, implicit in the provisions of *N. J. S. A.* 11:22–38 is the requirement that there be just cause for a protected civil servant to be reduced, removed, discharged or fined. The Civil Service Commission is charged with the duty of insuring that the reasons given by the appointing authority for such action are not arbitrary, frivolous or "likely to subvert the basic aims of the civil service program." *Kennedy v. Newark,* 29 *N. J.* 178, 189–190 (1959); *Handlon v. Belleville,* 4 *N. J.* 99, 106 (1950).

Thus, the primary focus of *N. J. S. A.* 11:22–38 (and *N. J. S. A.* 11:15–1 *et seq.* as to state employees) is most often on charges of misconduct brought against individual employees, with the power of review in the Commission to determine whether the allegations of the appointing authority are supported by the facts, or the employee is the victim of arbitrary discrimination in contravention of the underlying principles of civil service protection. In this regard note the reference in *N. J. S. A.* 11:22–38 to "charges" that have been made against the employee. See, *e. g., N. J. S. A.* 11:4–3.6; 11:5–1(d); 11:15–1 *et seq.;* 11:22–11; *DeMarco v. Bergen Cty. Bd. of Chosen Freeholders,* 21 *N. J.* 136, 147 (1956); *Weaver v. N. J. Dept. of Civil Service,* 6 *N. J.* 553 (1951); *Greco v. Smith,* 40 *N. J. Super.* 182 (App. Div. 1956); *West New York v. Bock,* 38 *N. J.* 500, 514–519 (1962).

But civil service tenure protection does not impede

* * * the right of a governing body to discontinue old methods, create new offices, *and otherwise make changes in the public interest,* provided such changes are not mere pretexts for removal from office * * *. [*Newark v. Civil Service Commission,* 112 *N. J. L.* 571, 575 (Sup. Ct. 1934), aff'd 114 *N. J. L.* 185 (E. & A. 1934); emphasis supplied]

See also, *Camden v. Civil Service Comm'n,* 118 *N. J. L.* 501, 504–505 (Sup. Ct. 1937); *Reck v. North Bergen Bd. Comm'rs,* 110 *N. J. L.* 173 (E. & A. 1932).

██ Thus, for example, it is well settled that a classified civil servant may be discharged or his position abolished where the desire is a good faith effort to achieve governmental economy or efficiency and the action is taken in the public interest. In such circumstances there is no threat of circumvention of the policy against political or other prohibited considerations. See, *e. g.*, *Barringer v. Miele*, 6 *N. J.* 139, 145 (1951); *Byrnes v. Hudson County Boulevard Comm'rs*, 121 *N. J. L.* 497, 500 (E. & A. 1938); *Padavano v. North Bergen Tp.*, 13 *N. J. Super.* 6 (App. Div. 1951); *N. J. S. A.* 11:15-9, 11:22-10.1, 11:22-37. Moreover, there is a presumption that the action of the employer was taken in good faith and the burden is on the employee to show the contrary. *Sieper v. Dept. of Civil Service*, 21 *N. J. Super.* 583, 586 (App. Div. 1952); *Schnipper v. North Bergen Tp.*, 13 *N. J. Super.* 11, 15 (App. Div. 1951).

█ Although there are exceptions, in general it may be assumed that the discrimination or other unfair conduct that *N. J. S. A.* 11:22-38 is designed to prevent most often surfaces in the form of action taken against an individual employee, rather than large groups of similarly situated personnel. At least in instances of across-the-board changes in the terms and conditions of employment, as in the situations before us, the foregoing alien considerations to be guarded against will most often not be present. *Cf. N. J. S. A.* 11:4-3.6. In any event, the Civil Service Commission may not take action under *N. J. S. A.* 11:22-38, either with respect to a group of classified employees or a single employee, to override salary adjustments required for reasons of economy where the public employer acts in good faith and where no actual discrimination is involved. *Tanis v. Passaic Cty.*, *supra; Henninger v. Bergen Cty.*, 130 *N. J. L.* 191, 192 (Sup. Ct. 1943). See also, *Santucci v. Paterson*, 113 *N. J. L.* 192, 193 (Sup. Ct. 1934).

Although the extensions in hours here may be distinguishable in some respects from discharges and reductions for economic reasons, for the purposes of these appeals they

may be placed in the same category. The point need not be labored that the extension of the court day and the corresponding increases in respondents' hours were done in good faith and in furtherance of the public interest. See *N. J. Const.* (1947), Art. VI, § II, par. 3; Art. VI, § VII, par. 1; *In re Brennan,* 126 *N. J. Super.* 368 (App. Div. 1974).

Specifically, the directives of the Chief Justice, county prosecutor and assignment judge were not the subject of the employees' appeal to the Commission. Rather, they contest the failure of the freeholders to give them a commensurate pay increase in the face of the directives over which the freeholders had no control.

Respondents have made not the slightest suggestion that the failure of the counties to grant salary increases was politically or personally motivated or would run afoul of the safeguards that tenure provides. Indeed, it would appear difficult to do so. There is no proof of bad faith on the part of the counties in refusing the additional pay. The increase in hours is a hazard to which all personnel involved in administering the judicial system are subject. The record is barren of evidence that the counties are unable financially to effect such a pay increment, and arguably fairness should have prompted it. But in view of what we have said, the Commission erroneously compelled that action.

Thus, we think it plain that the classified civil servant's tenure protections do not establish an absolute bar to what may be deemed a reduction in salary or status. It is only when such action tends to frustrate the beneficent purposes of the Civil Service Act in the manner indicated that the Commission should act to resolve any deprivation of rights thereunder. The cases before us are not in that category.[2]

---

[2]We are not persuaded by the Commissioner's reliance upon *Gowdy v. State Board of Education,* 84 *N. J. L.* 231 (Sup. Ct. 1913), aff'd o. b. 85 *N. J. L.* 726 (E. & A. 1914). In that case a local school board in effect reduced tenured teachers' salaries without good cause in

██ ██ The view that the present cases were not properly in the civil service arena is buttressed when consideration is given to the provisions of the New Jersey Employer-Employee Relations Act, *supra*. Under that act the terms and conditions of employment, such as compensation, are mandatorily negotiable. The act reflects a state policy to promote voluntary resolutions of public employer-employee disputes over terms and conditions of employment. If the employees form an organization recognized under the act for the purpose of collectively negotiating these terms with the public employer, their remedy in a case such as this is to negotiate the matter of payment for longer hours with the respective Boards of freeholders. In the event the latter fail to negotiate in good faith, the organization may seek the aid of the courts to require them to do so. If an impasse is reached, either party may seek the aid of the Public Employment Relations Commission to assist in effecting a voluntary resolution. This procedure would apply plainly to the Detectives and the Hudson Court Clerks, both of which were organized when the Commission exercised jurisdiction. *Burlington Cty. Evergreen Pk. Mental Hospital v. Cooper, supra; Englewood Bd. of Ed. v. Englewood Teachers,* 64 *N. J.* 1, 6–7 (1973); *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n,* 64 *N. J.* 17 (1973); *In re Newark Teachers Union,* 118 *N. J. Super.* 215, 221 (App. Div. 1972), certif. den. 60 *N. J.* 466 (1972).

The Clerical Employees, although unorganized, may present their grievances with respect to an increase in pay to the county, either personally or through an appropriate representative or an organization of which they are members. *N. J. S. A.* 34:13A–5.3. However, under the facts of the cases before us, the Civil Service Commission should not have exercised jurisdiction to direct that additional pay for

derogation of the applicable statute. Here, the failure of the free-holders to grant a commensurate pay increase does not run counter to civil service tenure provisions. They did not affect the increase in hours.

the extra hours be made by the counties. If the court-related employees here involved deem that they are not being treated properly by the county, there may be other avenues of relief open to them. See *In re Application of Bigley,* 55 *N. J.* 53 (1969); *In re Application of Schragger,* 58 *N. J.* 274, 279–280 (1971).

The Commission did not purport to exercise jurisdiction to rectify an unfair labor practice by the counties because of their failure to pay the additional compensation here. It acted solely under *N. J. S. A.* 11:22–38. In any event, we do not read *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, supra,* as authorizing the Commission to consider whether the public employer has negotiated in good faith as to such compensation, to direct that the employer so negotiate, or to require the employer to make such additional payments under the circumstances here involved. See Gross, "Collective Bargaining and Civil Service in New Jersey," 97 *N. J. L. J.* 521 (July 14, 1974).

What we hold does not mean that in its proper sphere the Civil Service Commission may not exercise appropriate jurisdiction over classified employees' rights. Our duty is to read the Civil Service Act and the Employer-Employee Relations Act, as applied to the situations before us, so that both are harmonized and each is given its appropriate role. *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra,* 64 *N. J.* at 24–25. The later act did not envision that the exercise by public employees of their right to act collectively would constitute an instant eradicator of their vested tenure rights under the Civil Service Act which we have discussed. *N. J. S. A.* 34:13A–5.3; 34:13A–8.1; *Dunellen, supra,* 64 *N. J.* at 25, 28–29; *Lullo v. Internat'l Ass'n of Fire Fighters,* 55 *N. J.* 409, 440 (1970). See *Essex Council #1, N. J. Civil Service Ass'n v. Gibson, supra,* 118 *N. J. Super.* at 585. See also, *N. J. Turnpike Emp. Union v. N. J. Turnpike,* 64 *N. J.* 579, 581 (1970). Thus, even where public employees have organized, negotiated and executed a collective agreement with their employer, if one or more of

the employees in the group have been the victim of political discrimination, personal favoritism, arbitrary infringement of rights or any of the abuses that civil service legislation was intended to rectify, he or they may seek relief before the Civil Service Commission to enforce or protect tenure rights.

█ Both the Detectives and Clerical Employees argue that the prosecutor's rules and regulations provided that the normal work day was from 9:00 a.m. to 4:00 p.m., and that all personnel were hired on that basis. However, the County of Essex Personnel Handbook states that the hours of work are to be determined by the respective department heads. Moreover, even if the 9:00 a.m. starting time is viewed as an implied term of employment, the extension of the work day without an increase in compensation is not a matter, under the circumstances here, with respect to which the Civil Service Commission should have acted.

Two additional contentions are made to which normally we need not address ourselves in view of our disposition of these cases.

█ █ The counties argue that the Commission was without jurisdiction because the directives extending the work days were not issued by the freeholders — the appointing authorities.[3] This contention is based on the erroneous assumption that the employees have contested the directives extending their work days. Not so. They dispute the inaction of the respective freeholders who, according to all of the parties, are the appointing authorities.[4]

---

[3] *N. J. S. A.* 11:22–38 speaks in terms of actions taken by the "appointing authority."

[4] We note, in passing, that pursuant to *N. J. S. A.* 2A:157–2 and 2A:157–10 the prosecutor has the power to appoint detectives and investigators. Thus, there may be some question as to who, strictly speaking, is the "appointing authority." However, the unique division of the traditional employer attributes among two or more persons or bodies (see *In re Brennan*, 126 *N. J. Super.* 368 (App. Div. 1974)) should not be used as means to frustrate the employees' legitimate

 Finally, the counties contend that the Commission was without power to order an increase in pay because its authority is limited to either approving or disapproving the action of the appointing authority. However, the power in the Commission to modify an action taken is well settled. See *N. J. S. A.* 11:2A:1, 11:15-6; *West New York v. Bock,* 38 *N. J.* 500, 514-519 (1962). Where the Commission determines that an employee has been improperly discharged it has the power to order back pay upon reinstatement. *Mason v. Civil Service Comm'n,* 51 *N. J.* 115 (1968). If it were to find a case of an unjustified reduction in salary within its jurisdiction, there is no reason that its authority should be any less.

The determination and order of the Civil Service Commission are reversed and vacated.

tenure rights. Rather, our decision rests on the foregoing discussion of the meaning of such tenure protection and the applicability of *N. J. S. A.* 34:13A-1 *et seq.*