CITY OF HACKENSACK, RESPONDENT, v. RICHARD WINNER, AND NICHOLAS SARAPUCHIELLO, WILLIAM KREJSA, APPELLANTS, AND THE PUBLIC EMPLOYMENT RELATIONS COMMISSION, APPELLANT..

Argued March 6, 1979—Decided January 22, 1980.

(1)

4

8

David Solomon argued the cause for appellants Sarapu-chiello and Krejsa (*Schneider, Cohen* and *Solomon*, attorneys).

*Sidney H. Lehmann*, General Counsel, argued the cause for appellant Public Employment Relations Commission (*Don Horowitz*, Deputy General Counsel, on the briefs).

*Erminie L. Conley*, Assistant Attorney General, argued the cause on behalf of *amicus curiae* Civil Service Commission (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

*James P. Granello* argued the cause for respondent (*Murray, Granello* and *Kenney*, attorneys; *John Paul Dizzia*, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This appeal comes to us as a result of conflicting decisions by two State administrative agencies arising from their separate handling of a single controversy over which each had apparent jurisdiction. The case originated with a dispute between a municipality, the City of Hackensack, and several of its civil service employees, firefighters claiming that they had been improperly denied promotions to the rank of lieutenant in the fire department. The employees' complaints related to their merit and fitness for promotion and were thus governed largely by the civil service laws and the Civil Service Commission under Title 11. *N.J.S.A.* 11:1–1 *et seq.* The employees also asserted, however, that their promotions had been withheld because of

their union activity. In this respect, the claims were covered by the Public Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 *et seq.*, and subject to the jurisdiction of the Public Employment Relations Commission under that act. Separate actions were brought before each administrative agency by the firefighters with respect to their employment claims. The two agencies, independent of one another, proceeded to adjudicate the matters in dispute and ultimately reached different findings of fact, arrived at dissimilar legal conclusions and imposed inconsistent administrative remedies. This unstable and unsettling disposition of the controversy, which was appealed to the Appellate Division, its decision reported at 162 *N.J.Super.* 1 (1978), impelled our grant of certification. 78 *N.J.* 404 (1978).

To place the issues in proper perspective, a rather methodical trailing of the case through each administrative agency to its present posture is needed. In January 1974 the Department of Civil Service held a promotional examination for the position of fire lieutenant in the City of Hackensack ("the City" of "Hackensack"). As a result of that examination a promotion eligibility list was promulgated by the Department in April 1974. Petitioner William Krejsa ranked fourth on that list and petitioner Nicholas Sarapuchiello ranked sixth. Another petitioner, Richard Winner, who placed third on the list, did not pursue his claims and is no longer involved in the case. In December 1974, in response to a request from the City, the Department of Civil Service issued a certification of individuals eligible for appointment to the position of fire lieutenant. In accordance with civil service rules, *N.J.A.C.* 4:1–12.4(a)(2), eight names were certified for six openings. Numbers one, two, five, seven and eight on that list were all promoted to the position of fire lieutenant effective February 12, 1975. It was stipulated that this marked the first time that Hackensack had not made promotions in its

fire department strictly according to rank order on the eligibility list without any skipping or bypassing.

On February 13, 1975, petitioners Sarapuchiello and Krejsa challenged the denial of their promotions before the Acting Director of Local Government Services in the Department of Civil Service who, on April 20, 1975, issued a preliminary determination that Hackensack had not violated civil service laws or regulations in bypassing the charging parties. Following a reaffirmation of this determination upon a review requested by the charging parties, an appeal was taken to the Civil Service Commission on June 12, 1975. Hearings were held before a civil service hearing officer on October 29 and November 12, 1975, and January 6, 1976. The hearing officer issued a report and recommendation on February 19, 1976, in which he concluded that the charging parties had failed to show by a preponderance of the evidence that they had been denied promotions for unlawful reasons. In particular, he found that "[t]he Fire Chief [had] promoted two active union officers which indicate[d] to this Hearing Officer that [the Fire Chief had] not discriminate[d] against the Appellants because of their union activities." The hearing officer recommended on the basis of his conclusions that the appeals be dismissed. The charging parties filed exceptions to the hearing officer's report and Hackensack filed an answering brief. At its meeting on April 30, 1976, the Civil Service Commission accepted the hearing officer's findings of fact and conclusions. The Commission's decision dismissing the appeals was issued on May 20, 1976. The charging parties requested reconsideration, but the Commission denied their request on July 20, 1976, as communicated by letter dated August 13, 1976. This decision was not appealed to the Appellate Division.

The proceedings before the Public Employment Relations Commission (PERC) began with the submission of unfair practice charges by the same three employees on February 18, 1975, five days after the initial filing of their request for review by the Department of Civil Service. Amended charges were filed

on May 16, 1975, and PERC issued a complaint and notice of hearing on June 18, 1975. On June 24 Hackensack filed its answer to the unfair practice charges and a motion to dismiss the complaint. This motion was denied by the PERC hearing examiner on August 25, 1975. On August 26 Hackensack filed a request with PERC for permission to appeal, pursuant to *N.J.A. C.* 19:14–4.6, but this request was denied on September 11, 1975. Hearings were held before the PERC hearing examiner on October 21 and November 21, 1975, and January 8, 1976. On March 2, 1976, after the release of the civil service hearing officer's report and recommendation, Hackensack requested the PERC hearing examiner to dismiss the PERC complaint. Counsel for the charging parties submitted a letter in response on March 9, and on March 16 the PERC hearing examiner advised the parties that he would rule on the dismissal request when he issued his full report and recommended decision. On May 27, 1976, after the release of the Civil Service Commission's decision adopting the findings and recommendations of its hearing officer, Hackensack again requested the PERC hearing examiner to dismiss the complaint. Counsel for the charging parties filed a response on June 1, and on June 3 the PERC hearing examiner affirmed his intention to defer his decision on the dismissal request until his overall determination. On or about July 12, 1976, the PERC hearing examiner issued a report and recommended decision in which he found that Hackensack had committed unfair practices in contravention of *N.J.S.A.* 34:13A–5.4 a(1) and 34:13A–5.4 a(3) in that the City's decision not to promote the charging parties had been motivated in part by a desire to discourage employees from participating in union activities. Included in his recommended decision was a cease and desist order as well as a requirement that Hackensack promote the two charging parties with full back pay. Hackensack filed exceptions to the hearing examiner's report. PERC issued a decision, dated March 16, 1977, in which it adopted, with minor modifications not here relevant, its hearing examiner's findings and recommendations.

Hackensack filed its notice of appeal on March 18, 1977. On April 14, 1977, PERC filed a notice of cross-appeal in which it sought an order for enforcement of its decision of March 16 pursuant to *N.J.S.A.* 34:13A–5.4 f. The Appellate Division, in its decision of July 31, 1978, ruled that the issue of anti-union animus had in fact been raised in both the civil service and the PERC proceedings. 162 *N.J.Super.* at 16–18. It then held that, in the context of a civil service proceeding, the Civil Service Commission had jurisdiction to hear claims of anti-union discrimination or bias. *Id.* at 21. The court determined that both agencies in fact had concurrent jurisdiction to consider the charges of anti-union discrimination. *Id.* at 23–24. In terms of the current dispute, the court was of the opinion that Civil Service had properly exercised its jurisdiction, *id.* at 24, and that, the issue of prejudice or lack of good faith due to union activities having been fully and fairly litigated before Civil Service, the parties were precluded from seeking in another forum further relief based on those same claims, *id.* at 29. The court also determined that even though a portion of PERC's remedy, the "ancillary" cease and desist order, was not inconsistent with the Civil Service order, that mode of * MESSAGE(S) *MORE SECTIONS FOLLOWrelief was "inappropriate"; thus the entire PERC order was reversed and set aside. PERC's cross-application for enforcement was accordingly denied. *Id.* at 33.

Both PERC and the charging parties filed petitions for certification. In granting certification, 78 *N.J.* 404 (1978), the Court constricted the focus of the appeal "solely to the issue of which agency should exercise jurisdiction over the subject matter of the within appeal, assuming that the unfair labor practice charge has been considered by both agencies" (Certification Order).

I

In a case like this one, where a public employee seeks to pursue his rights before the Civil Service Commission under the

civil service laws, but also alleges the existence of an unfair employment practice cognizable under the Public Employer-Employee Relations Act and looks for redress before the Public Employment Relations Commission, the question of dual administrative jurisdiction is raised and a determination of agency priority cannot be avoided. The approach for resolving the jurisdictional and procedural imbroglio created by these circumstances may appropriately commence with our recent decision in *Hinfey v. Matawan Reg. Bd. of Ed.*, 77 *N.J.* 514 (1978).

The Court in *Hinfey* faced a jurisdictional dispute between the Division on Civil Rights and the Commissioner of Education regarding claims of sex discrimination in educational curricula in various public schools. 77 *N.J.* at 521. The Court concluded that, under the circumstances presented, it was proper for the Commissioner of Education to decide the controversy and that the Division of Civil Rights should transfer that aspect of the case to the Commissioner for adjudication. The path followed by the Court in resolving the jurisdictional dilemma engendered first an examination of the statutory authority of both agencies with respect to the disputed matters and a determination of whether both agencies had jurisdiction over the claims. Second, upon a determination that each of the two agencies had jurisdiction, the Court sought to ascertain whether that jurisdiction was paramount or primary in one of the two agencies in the sense that one of the agencies would be statutorily required to entertain the case prior to a hearing by the other agency. This inquiry called for a determination of whether either agency would be required or compelled by virtue of its statutory jurisdiction to proceed in the matter before it regardless of the jurisdictional claim of its sibling agency or the status of the same case before that other agency. If it were found that one or both agencies had discretionary jurisdiction, *i. e.*, that there was no statutory mandate for one agency to proceed first to adjudicate the controversy, at least in view of the pendency of the same dispute before the other agency, the final task for the

Court was to explore the standards for the exercise of that administrative discretion. The Court, in addressing how agencies were to be guided in the situations where each was found to have parallel but discretionary jurisdiction over the same controversy, emphasized that the exercise of agency discretion should be governed by "[p]rinciples of administrative comity." 77 *N.J.* at 532. A similar approach is called for in this case. The inquiry here therefore should start with an examination of the nature of the jurisdiction of the two administrative agencies.

The bedrock difficulty in analyzing the jurisdiction of each of the two agencies in this case inheres in the fact that the underlying dispute does not present a single-issue or single-remedy controversy. As noted, the dispute includes claims that public employment promotions were wrongfully withheld under the civil service criteria relating to merit and fitness. These claims also charge that this wrongful action was prompted by improper motives and bad faith based upon anti-union prejudice, allegedly an unfair practice contrary to the provisions of the Public Employer-Employee Relations Act. In addition to this admixture of factual and legal issues, agency jurisdiction is complicated by the prospect of overlapping and conflicting administrative remedies. Each of the administrative agencies here involved is empowered to grant similar broad remedial relief to rectify the asserted employment injuries. Compare, *e. g., Mastrobattista v. Essex Cty. Park Comm'n*, 46 *N.J.* 138 (1965) (Civil Service Commission has authority to order back pay and restoration to civil service duty in cases of wrongful suspension and dismissal), with *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec.*, 78 *N.J.* 1 (1978) (PERC has authority to order restoration of working hours, award back pay, and direct the public employer to cease and desist in its interference with the employees' rights). See generally Tener, "The Public Employment Relations Commission: The First Decade," 9 *Rut.-Cam.L. Rev.* 609 (1978) [hereinafter referred to as Tener, "The First Decade"]. Thus the jurisdictional dilemma is not readily resolv-

able by the emergence of one distinct form of administrative relief which is uniquely the province of one of the competing agencies.

Courts with growing frequency have been confronted with the intricate puzzles involved in solving threshold jurisdictional questions raised by the increasing incidence of conflicts between administrative agencies. See Sewall, "Administrative Jurisdiction and Authority," 6 *Ind.L.Rev.* 446, 454–459 (1973); Note, "The Preclusive Effect of State Agency Findings in Federal Agency Proceedings," 64 *Iowa L.Rev.* 339, 340 (1979) [hereinafter cited as Note, "Preclusive Effect"]. This phenomenon of increasing agency conflicts is due, no doubt, to the continuing expansion of the administrative law field and the concomitant proliferation of administrative tribunals with common or similar regulatory responsibilities over the same subject matter. See, *e. g., Hinfey v. Matawan Reg. Bd. of Ed., supra; F.T.C. v. Ruberoid Co.,* 343 *U.S.* 470, 487, 72 *S.Ct.* 800, 810, 96 *L.Ed.* 1081, 1094 (1952) (dissent by Jackson, J.) ("The rise of administrative bodies probably has been the most significant legal trend of the last century . . . . They have become a veritable fourth branch of the Government, which has deranged our three-branch legal theories much as the concept of a fourth dimension unsettles our three-dimensional thinking."). See also *Vanderbilt,* Foreword to *Federal Administrative Procedure Act and the Administrative Agencies* at iii (1947) ("The outstanding development in the law in the present century has, beyond any doubt, been the growth of innumerable administrative agencies."); J. Jacobs, "Administrative Agencies, Their Status and Powers" (Monograph), II *Proceedings of Const. Conv. of 1947* 1431, 1431 (1951) ("[State g]overnment operation through the 'ninety-odd' agencies has been a matter of gradual growth without any set plan or program. The absence of any relationship between the functioning of one agency and that of another has marked this

development.") [hereinafter referred to as J. Jacobs, "Administrative Agencies, Their Status and Powers"].

These developments have greatly enhanced the probability that disputes calling for administrative adjudication will implicate more than one agency. As a result, both courts and administrative agencies have been called upon repeatedly to make the hard and sensitive decisions required to identify mixed controversies for jurisdictional purposes. *E. g., Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n*, 79 *N.J.* 311, 315–317 (1979); *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144, 153–155 (1978); *State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 83–84, 86 (1978); *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n*, 78 *N.J.* 25, 38–39, 47 (1978); *Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n*, 64 *N.J.* 17, 28–29, 31–32 (1973); *Burlington Cty. Col. Fac. Ass'n v. Bd. of Trustees*, 64 *N.J.* 10, 16 (1973); *Englewood Bd. of Ed. v. Englewood Teachers Ass'n*, 64 *N.J.* 1, 6–9 (1973). See Note, "Public Sector Labor Relations: The New Jersey Supreme Court Interprets the 1974 Amendments to the Employer-Employee Relations Act," 32 *Rutgers L.Rev.* 62 (1979) [hereinafter cited as Note, "Public Sector Labor Relations"]; Tener, "The First Decade," *supra*, 9 *Rut.-Cam.L. Rev.* at 615, 637. These decisional difficulties are exemplified by the particular complexity presented in this very case. Courts and agencies, albeit in somewhat different settings, have dealt with mixed disputes as here, involving claims based upon conventional civil service rights as well as upon those rights given public employees with respect to self-organization, representation and conditions of employment. *E. g., State v. State Supervisory Employees Ass'n, supra*, 78 *N.J.* at 63, 86–87. See also *Patrolmen's Benevolent Ass'n v. Elizabeth*, 146 *N.J.Super.* 257, 262–263 (App.Div.1976); *Essex Cty. Pros. Det. & Inves. Ass'n v. Hudson Cty. Bd. of Freeholders*, 130 *N.J.Super.* 30, 45–47 (App. Div.1974), certif. den. 66 *N.J.* 330 (1974). In analyzing the present controversy, the Appellate Division ruled, correctly in

our view, that each agency had a legitimate jurisdictional claim to entertain the case.

There appears here to be no real dispute as to the Civil Service Commission's right to resolve the claims that were before it. The parties do not deny that the Civil Service Commission has the jurisdiction to consider allegations of improper employment activities when these are asserted in the context of a civil service proceeding directed primarily to compliance with civil service requirements and with the granting of civil service relief. 162 *N.J.Super.* at 21. The Civil Service Commission has broad powers to determine merit and fitness in connection with appointments and promotions. *Malone v. Fender*, 80 *N.J.* 129 (1979); *State Troopers Fraternal Ass'n, Inc. v. State*, 115 *N.J.Super.* 503 (Ch.Div.1971), aff'd *per curiam* 119 *N.J.Super.* 375 (App.Div.1972), aff'd *per curiam* 62 *N.J.* 302 (1973). It has full authority to inquire into the basis for appointments and promotions in the civil service of the State and of local jurisdictions. *Malone v. Fender, supra.* The merit and fitness principle necessarily engenders a responsibility to ascertain whether the appointing authority acted improperly or exercised discretion arbitrarily. See *Mason v. Civil Service Comm'n*, 51 *N.J.* 115, 125–128 (1968). See also *Walsh v. Civil Service Dep't*, 32 *N.J.Super.* 39, 43–44 (App.Div.1954), certif. granted 17 *N.J.* 182 (1955) (subsequently dismissed). This broad authority includes the right to inquire into the good faith of governmental conduct directly affecting civil service employees. See, *e. g., Cunningham v. Civil Service Dep't*, 69 *N.J.* 13, 18 (1975) (alleged malicious plan to demote employee); *Burlington Cty. Evergreen Park Mental Hosp. v. Cooper*, 56 *N.J.* 579, 583–584 (1970) (asserted unfair labor practices in dismissal of employee for organizational work for public employees union); *Weaver v. Civil Service Dep't*, 6 *N.J.* 553, 558–559 (1951) (dismissal because of the employee's political opinions and affiliations); *Newark v. Civil Service Comm'n*, 112 *N.J.L.* 571, 574–575 (Sup.Ct.1934), aff'd *per curiam* 114 *N.J.L.* 185 (E. & A. 1935) (a

breach of good faith to circumvent statutory procedure when removing an employee); see also *McGarrity v. Civil Service Dep't,* 140 *N.J.Super.* 536, 540–541 (App.Div.1975), certif. den. 70 *N.J.* 152, 153 (1976) (alleged discriminatory grading of civil service examination); *Essex Cty. Pros., Det. & Inves. Ass'n v. Hudson Bd. of Freeholders, supra,* 130 *N.J.Super.* at 46–47 (alleged political discrimination, personal favoritism and arbitrary infringement of rights are proper foci for Civil Service Commission examination); *Sogliuzzo v. Hoboken,* 62 *N.J.Super.* 243, 250 (App.Div.1960) (not an abuse of discretion to select for promotion an eligible individual just because that person is related to the appointing authority); *East Paterson v. Civil Service Dep't,* 47 *N.J.Super.* 55, 68 (App.Div.1957) ("[the] consideration of *bona fide* action on the part of the municipality is an essential part of the Civil Service Commission's reviewing function"); *Schnipper v. North Bergen Tp.,* 13 *N.J.Super.* 11, 14–15 (App.Div.1951); Note, "Public Sector Labor Relations," *supra,* 32 *Rutgers L.Rev.* at 81–83. The concepts of bad faith or arbitrariness include improper motives on the part of a government employer reflecting bias against public employee organizations. See *Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, supra.* Hence, charges before the Civil Service Commission of failure to promote because of labor union activity would necessarily implicate merit and fitness standards and thus be cognizable by the Commission in a case properly before it.

 There is also little question that PERC has jurisdiction in a case such as this where individual public employees allege that they wrongfully have been denied promotions because of their organizational activities within the public work force. Government employees have a constitutional right to secure organizational representation in employment. *N.J.Const.* (1947), Art. I, par. 19. See *Red Bank Regional Ed. Ass'n v. Red Bank Regional High School Bd. of Ed.,* 78 *N.J.* 122, 136–137 (1978); *West Windsor Tp. v. Public Employment Relations Comm'n,* 78

N.J. 98, 109 (1978); *Passaic Cty. Probation Officers' Ass'n v. Passaic Cty.*, 73 N.J. 247, 251 (1977); *Union Beach Bd. of Ed. v. New Jersey Ed. Ass'n*, 53 N.J. 29, 44–45 (1968). See generally Coleman, "A Perspective on Public Employee Unionism in New Jersey," 4 *Rut.–Cam.L.J.* 289 (1973). *N.J.S.A.* 34:13A–5.3 vindicates this constitutional right and also guarantees employees protection in its exercise. *N.J.S.A.* 34:13A–4.5 a(1) and 34:13A–5.4 a(3) prohibit and punish unfair practices in public employment. Such unfair practices include "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by this act" and "[d]iscriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by this act." *Id.* PERC's jurisdiction over unfair practices is sufficiently broad to accommodate claims of wrongful treatment relating to the organizational rights of employees as well as to their working conditions. *Cf. Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, supra; Kaczmarek v. New Jersey Turnpike Auth.*, 77 N.J. 329, 342–343 (1978). And PERC's statutory remedial powers to redress economic injury and to prevent wrongs of this kind are fully commensurate with its broad jurisdictional grant. *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., supra.* It would certainly constitute an unfair practice if public employees, having engaged in lawful organizational activities, were to be penalized or denied promotions because of that protected participation. For present purposes, we would content ourselves on this point with the analogy furnished by the *National Labor Relations Act*, 29 *U.S.C.A.* § 151 *et seq.*, see *Lullo v. International Ass'n of Fire Fighters*, 55 N.J. 409, 422–425 (1970), and note simply that the denial or threatened withholding of a promotion because of union activities has been recognized as a violation of that act. *E. g., N.L.R.B. v. Marmon Transmotive*, 551 F.2d 732 (6 Cir. 1977); *Steves Sash & Door Co. v. N.L.R.B.*, 401 F.2d 676 (5 Cir. 1968). See Tener, "The First Decade," *supra*, 9 *Rut.–*

*Cam.L.Rev.* at 613; Note, "Public Sector Labor Relations," *supra*, 32 *Rutgers L.Rev.* at 81–91.

■ We conclude from this analysis that each agency, both the Civil Service Commission and the Public Employment Relations Commission, had a definitive statutory basis for dealing with the case before it. In terms of the dispute as here presented, each administrative body can be said to have had parallel or concurrent jurisdiction over the controversy between the parties.

## II

The question of whether the concurrent or parallel jurisdiction residing in each agency to handle this mixed controversy was mandatory or discretionary must next be addressed. In treating this question, the inquiry is directed first to the nature of PERC's jurisdiction in terms of the degree of flexibility which that agency possesses in dealing with cases before it. We focus upon PERC since, as a practical matter, there has been no challenge to the power of the Civil Service Commission to decide the case, no appeal from the Civil Service Commission's finding, and no contention that the Civil Service Commission should have stayed its proceedings as an exercise of sound discretion. In any event, PERC now vigorously contends that its own jurisdiction over the unfair practice issue was compulsory and thus had to be exercised without regard to the pendency or the outcome of the Civil Service Commission proceedings.

In *Hinfey v. Matawan Reg. Bd. of Ed., supra,* this Court dealt with a similar question, there in terms of whether an "occlusive statutory bar" existed which would prevent the exercise of agency discretion in staying a proceeding and in transferring the matter to another agency with cognate jurisdiction. 77 *N.J.* at 531. We there held that the Division on Civil Rights had discretionary jurisdiction to abstain from handling a dispute involving sex discrimination in academic curricula and could

transfer that issue to the Commission of Education for adjudication. PERC, joined by the individual petitioners, while not couching its contentions in terms of an "occlusive statutory bar," here asserts that its jurisdiction over the unfair practice charge is "exclusive" under *N.J.S.A.* 34:13A–5.4 c and that this jurisdiction is mandatory.

This argument by PERC for compulsory, preemptive jurisdiction is based primarily upon one of the 1974 amendments to the Public Employer-Employee Relations Act. Prior to the passage of those amendments, *L.*1974, *c.* 123, this Court had held that the Civil Service Commission had jurisdiction to hear public employee complaints based upon a wrongful dismissal for organizational activities. *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper, supra,* 56 *N.J.* at 583–584. The Court also held in that case that PERC had no similar statutory jurisdiction to hear charges such as unfair labor practices. This latter holding was subsequently overruled legislatively by the enactment of *L.*1974, *c.* 123; § 1; *N.J.S.A.* 34:13A–5.4. See *Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, supra,* 78 *N.J.* at 33; *Patrolman's Benev. Ass'n v. Montclair,* 70 *N.J.* 130, 136 (1976); Note, "Public Sector Labor Relations," *supra,* 32 *Rutgers L.Rev.* at 82–83. That amendment granted PERC "exclusive power" to hear unfair practice charges, *N.J.S.A.* 34:13A–5.4 c, and, according to PERC, manifested a legislative intent to divest the Civil Service Commission of parallel jurisdiction to hear such claims.

PERC has duly noted that the Public Employer-Employee Relations Act provides that "[n]othing [t]herein shall be construed to deny any individual employee his rights under Civil Service laws or regulations." *N.J.S.A.* 34:13A–5.3. See Seliger & Crangle, "A New Direction for Public Safety Employees," 9 *Rut.–Cam.L.J.* 685, 686–687 (1978). This potential conflict within the same statute, occasioned by the purported grant of exclusive jurisdiction to PERC and the continued preservation

of jurisdiction in the Civil Service Commission, generates an ambiguity that invites recourse to the legislative history of the provision as an aid in unraveling the true legislative intent. See *Malone v. Fender, supra*, 80 *N.J.* at 136–139, for a similar treatment of *N.J.S.A.* 11:22–32 (a civil service provision).

■ The relevant legislative history is not strongly supportive of PERC's position that its jurisdiction over any unfair practice is totally preemptive. In 1972 *Assembly Bill* 520 was introduced, according to the statement of its sponsor, for the purpose of "[g]ranting PERC the power to receive, hear and act upon charges of unfair labor practices and to enforce its decisions." Section 1(c) of that bill empowered PERC to prevent anyone from engaging in any enumerated unfair practices; it also provided that "[t]his power shall be exclusive and shall not be affected by any other statute." The bill was passed by the Legislature, but Governor Cahill returned it with his objections and recommendations for reconsideration, among which was the deletion of the provision regarding the exclusivity of PERC's power. The bill was not subsequently reenacted. In 1974 *Senate Bill* 1087 was introduced. Although it went through a number of changes before ultimately being enacted as *L.*1974, *c.* 123, the provision regarding PERC's jurisdiction, as that provision now appears in *N.J.S.A.* 34:13A–5.4 c, deleted the conjunctive qualification that its power "shall not be affected by any other statute." The sponsors, in their statement, said simply that the bill would give PERC "unfair labor practice jurisdiction." Given Governor Cahill's objection, it would appear that the subsequently-enacted 1974 version was intended as a less obtrusive expression of the nature of PERC's jurisdiction and as a recognition that statutes in other areas might also have some proper role in the sphere of public employment. See generally Note, "Public Sector Labor Relations," *supra.*

It seems evident that the Legislature thus hoped to harmonize or meld the overlapping rights of public employees, to discourage internecine struggles between concerned agencies, and to

avoid as well haphazard or random conflicts between agencies. That overriding multipartite purpose is consistent with the spirit which, under our modern constitution, animated the structuring of the executive branch of government and brought about a centralization of and limitation upon the number of major executive departments. See *N.J.Const.* (1947), Art. V, § IV; J. Jacobs, "Administrative Agencies, Their Status and Powers," *supra.* As brought to bear upon the agencies in this case, these considerations impel us to conclude that the Legislature fully intended to foster a constructive coexistence between the Public Employer-Employee Relations Act and the civil service laws and, further, that the relevant statutory schemes should be construed and applied so as to reconcile these distinct, yet complementary and interrelated, areas of governmental concern. See *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 73–83.

█ As previously mentioned, the Legislature by its 1974 amendment corrected a defect in administrative coverage which this Court noted in *Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, supra,* where no statutory power to deal with unfair labor practices was found to reside in PERC. *Patrolman's Benev. Ass'n v. Montclair, supra,* 70 *N.J.* at 136. *Cf. Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, supra.* The Legislature obviously believed that the existence or occurrence of unlawful practices called for the expert handling of a specialized administrative agency such as PERC and that in these matters that agency's jurisdiction was indeed to be preferred even to that of the courts. *Cf. Kaczmarek v. New Jersey Turnpike Authority, supra.* The 1974 amendment vested in PERC full authority to deal remedially with all aspects of the public employment environment when tainted by unfair labor conduct and to provide broad remedial relief to compensate victimized employees for economic injury; to eliminate, correct, and prevent unfair practices; and to improve the overall working climate for public employees. *Cf. Galloway Tp. Bd. of Ed. v.*

*Galloway Tp. Ass'n of Ed. Sec., supra.* Hence, the Public Employer-Employee Relations Act, as amended, should be understood as granting to PERC the exclusive administrative power to deal fully and completely with complaints of unlawful practices relating to employee rights not directly covered by other laws. It is also clear, however, that the Legislature did not intend by this important amendment to the Public Employer-Employee Relations Act to diminish the rights of employees under the existing civil service laws. *N.J.S.A.* 34:13A–5.3. See *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 86–87, 96; Note, "Public Sector Labor Relations," *supra,* 32 *Rutgers L.Rev.* at 73–79.

It is not easy to square these dialectical legislative objectives. In terms of the issues raised by this case, the most reasonable conclusion as to the intended application of the statute appears to be that the Civil Service Commission still retains jurisdiction over claims involving factual allegations of improper employment activity when these allegations are integral aspects of valid civil service complaints, even though, if standing alone, the factual circumstances might constitute an unfair practice. Indeed, PERC has conceded that where an unfair practice is not the sole, major or dominant issue in an employer-employee controversy, it would not be improper for the Civil Service Commission to consider that issue if it were otherwise relevant in a civil service proceeding addressing the employer-employee controversy. On the other hand, PERC would have exclusive power over claims involving unfair practice allegations when these allegations do constitute the sole or major complaint of the aggrieved employees. Similarly, wrongful conduct equated with unfair practice, though not the primary issue, may in the context of a particular controversy so dominate or color the entire case that its determination, as a practical matter, might substantially influence or render moot the resolution of other issues. In that situation it would be appropriate to consider PERC's jurisdiction to be "exclusive."

It is also possible that an unfair practice charge may raise issues of wide public significance affecting important interests extending beyond those of the immediate parties; in such a case, it may be appropriate to invoke PERC's jurisdiction even though the matter is otherwise cognizable before another administrative agency. Additionally, there may be cases in which the unfair practice issue is itself obviously severable from other issues and would thus permit separate, non-duplicative factual findings as well as special remedial relief, *e. g., Hinfey v. Matawan Reg. Bd. of Ed., supra* (the sex discrimination charges relating to educational curricula were severed from the discrimination charges with respect to employment; the Commission of Education was authorized to determine the former issue and the Division on Civil Rights, the latter); in such instances the exclusive exercise of jurisdiction by PERC limited to the severed unfair practice issue would be fitting. PERC's jurisdiction, moreover, would be exclusive with respect to unfair practices by *employees* as enumerated in *N.J.S.A.* 34:13A–5.4 b since public employers do not have the same right of appeal to the Civil Service Commission as do public employees. Further, PERC would also retain exclusive jurisdiction over those unfair employer practices, such as a refusal to negotiate in good faith, which do not in fact involve an individual employee's civil service or other agency-protected rights. *N.J.S.A.* 34:13A–5.4 a(5). Compare *Essex Cty. Pros., Det. & Inves. Ass'n v. Hudson Bd. of Freeholders, supra* (union's complaint regarding change in working hours should be heard by PERC and not by Civil Service Commission), with *Patrolmen's Benev. Ass'n v. Elizabeth, supra* (layoffs and demotions as part of reorganization should be heard by Civil Service Commission and not by PERC). *Cf. State v. State Supervisory Employees Ass'n, supra.*

We conclude that under the circumstances of this case the concurrent jurisdiction of PERC over the particular claims of the firefighters was not "exclusive" or preemptive under the Public Employer-Employee Relations Act and was not therefore

mandatory in the sense that PERC had no choice but to proceed in the matter even though it was properly pending before the Civil Service Commission. The claims raised mixed and multiple factual and legal issues; they directly projected civil service grievances and were not limited to allegations of employer misconduct solely, primarily or predominantly involving unfair practices under the Public Employer-Employee Relations Act. Nor was it suggested that the unfair practice allegations in the case were in any sense severable from the issues before the Civil Service Commission or that the complaints called only for a form of relief fundamentally different from that generally contemplated by the Civil Service Commission. Further, there was no adequate indication that the complaints projected issues of fundamental importance which clearly transcended the interests of the immediate participants. PERC, therefore, under the circumstances presented, had the statutory power to abstain initially from proceeding in the matter and to defer provisionally to the exercise of jurisdiction over the controversy by the Civil Service Commission. For reasons which we now explain, that discretion should have been exercised in favor of deference to the Civil Service Commission.

## III

Since PERC did not in fact abstain, the crux of this appeal has been presented in terms of whether PERC, by virtue of the existence of its discretionary jurisdiction over the instant controversy, should have considered itself bound by the final decision of the Civil Service Commission even though PERC itself also conducted a full hearing of the case. And, if so, whether such deference would apply to the complete determination of the Civil Service Commission, that is, not only to its factual findings and legal conclusions but also to the administrative relief accorded. Implicated in the resolution of this ultimate issue is the preliminary or subsidiary question of whether PERC, having the

statutory power or discretion to abstain *vel non* from proceeding initially in the matter, should have stayed or delayed its own assertion of jurisdiction until the Civil Service Commission had concluded *its* resolution of the case. The two questions are necessarily interrelated.

The Appellate Division was of the view that PERC's discretion in this case as to whether to defer to the Civil Service Commission's determination ought to have been guided by the precepts which govern judicial courts in similar situations. It mentioned illustratively the collateral estoppel and single-controversy doctrines. 162 *N.J.Super.* at 25. It is to be emphasized, however, that administrative agencies cannot be equated with judicial courts. An administrative agency is not simply a neutral forum whose function is solely to decide the controversy presented to it. Administrative agencies belong to a different branch of government. They are separately created and exercise executive power in administering legislative authority selectively delegated to them by statute. 1 *K. Davis, Administrative Law Treatise* § 1:2 at 9 (2d ed. 1978); Sewall, *supra*, 6 *Ind.L. Rev.* at 449–450; J. Jacobs, "Administrative Agencies, Their Status and Powers," *supra* at 1433. This is not to say that there are not strong similarities between administrative and judicial tribunals. The power exercised by administrative agencies, having legislative and executive as well as judicial characteristics, has been termed "quasi-judicial" when it takes the form of adjudication in contested cases. See, *e. g., Morgan v. United States (Morgan II),* 304 *U.S.* 1, 22, 58 *S.Ct.* 773, 778, 82 *L.Ed.* 1129, 1134 (1937); *Mazza v. Cavicchia,* 15 *N.J.* 498, 524 (1954); *Jamesburg v. Hubbs,* 6 *N.J.* 578, 585 (1951); *Pennsylvania R. R. Co. v. New Jersey Aviation Comm'n,* 2 *N.J.* 64, 68–70 (1949); *McFeely v. Board of Pension Comm'rs,* 1 *N.J.* 212, 215–216 (1948); *Adolph v. Elastic Stop Nut Corp.,* 18 *N.J.Super.* 543, 546–547 (App.Div.1952); *Morton v. Clark,* 102 *N.J.Super.* 84, 92–93 (Law Div.1968); 2 *K. Davis, Administrative Law Treatise, supra,* § 10:5 at 322–323 (2d ed. 1979); see also 1 *K. Davis,*

*Administrative Law Treatise, supra,* § 2:4 at 70–72, § 2:5 at 72–75 (2d ed. 1978). However, the adjudicative functions of administrative agencies are actually an aspect of their regulatory powers and, in essence, do not embrace or constitute the exercise of judicial authority. Rather, administrative adjudication constitutes a form of judicial mimicry, hence its characterization as *quasi*-judicial rather than judicial.

█ Courts, by contrast, are constitutionally-founded, independent and impartial adjudicative tribunals constituted to hold and exercise the judicial power which emanates directly from the Constitution. *U.S.Const.,* Art. III, § 1; *N.J.Const.* (1947), Art. VI, § 1. See, *e. g., Muskrat v. United States,* 219 *U.S.* 346, 354–356, 31 *S.Ct.* 250, 253–255, 55 *L.Ed.* 246, 249–250 (1911); *Gordon v. United States,* 117 *U.S.* 697, 699–704, 76 *L.Ed.* 1347, 1349–1353 (1865) (per Taney, C. J.). See also Committee on the Judiciary's Report to the Convention (August 26, 1947), II *Proceedings of Const. Conv. of 1947,* 1180, 1181, 1190 (1951); W.B. Graves, "What Should a Constitution Contain?" (monograph), II *Proceedings of Const. Conv. of 1947,* 1328, 1332 (1951). Consequently, procedures and techniques developed to handle the operation and business of the courts may not be transported *in toto* or imported wholesale into administrative agencies. Nevertheless, in practice, since there are pronounced similarities in the exercise of judicial and quasi-judicial powers, it has been recognized that court-fashioned doctrines for the handling of litigation do in fact have some genuine utility and relevance in administrative proceedings. But, in applying such court-based precepts to administrative agencies, their potential for achieving sound results must be tempered by a full appreciation of an administrative agency's statutory foundations, its executive nature, and its special jurisdictional and regulatory concerns. *Gordon Cty. Broadcasting Co. v. F. C. C.,* 144 *U.S.App.D.C.* 334, 337, 446 *F.*2d 1335, 1338 (D.C.Cir.1971) (*res judicata*); *Grose v. Cohen,* 406 *F.*2d 823, 824–825 (4 Cir. 1969) (*res judicata*).

The utilization of court-made procedural tools in administrative proceedings must depend in the final analysis upon the nature of the agency's regulatory responsibilities toward the subject matter of the controversy as well as toward the particular parties appearing before it. Moreover, because administrative agencies serve in part to effectuate the constitutional obligation of the executive branch to see that laws are faithfully executed, *N.J.Const.* (1947), Art. V, § I, par. 11, the public interest is an added dimension in every administrative proceeding. That interest is necessarily implicated in agency adjudications, and, in a sense, the public is an omnipresent party in all administrative actions. See, *e. g., N.J.S.A.* 34:13A–2. *Cf. Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., supra,* 78 *N.J.* at 33–37.

 Such considerations support the general principle that administrative agencies are entitled to and, indeed (as stressed by Justices Pashman and Schreiber in their separate opinions, *post* at 1166–1167 and 1170–1171), may in fact be required to exercise their statutory powers over controversies properly before them regardless of whether other administrative or judicial avenues for relief are also open to the complainants. This may be so regardless of the fact that aggrieved parties thereby proverbially gain two strings to the bow or two bites of the apple. There are pertinent examples in the field of federal labor law, *e. g., Alexander v. Gardner-Denver Co.,* 415 *U.S.* 36, 47–50, 94 *S.Ct.* 1011, 1018–1020, 39 *L.Ed.2d* 147, 158–159 (1974); *Carey v. Westinghouse Electric Corp.,* 375 *U.S.* 261, 270–272, 84 *S.Ct.* 401, 408–409, 11 *L.Ed.2d* 320, 327–328 (1964), as well as in the field of state and local public employment, *e. g., Albany v. Public Employment Rel. Bd.,* 57 *A.D.2d* 374, 375–376, 395 *N.Y.S.2d* 502, 504 (App.Div.1977), aff'd mem. o. b. 43 *N.Y.2d* 954, 404 *N.Y.S.2d* 343, 375 *N.E.2d* 409 (Ct.App.1978); *Dedham v. Labor Relations Comm'n,* 365 *Mass.* 392, 400–406, 312 *N.E.2d* 548, 555–557 (Sup.Jud.Ct.1974). *Cf. Rucker v. Wilson,* 475 *F.Supp.* 1164, 1166 (E.D.Mich.1979). The exercise of independent juris-

diction by an agency has been approved as a matter of imputed legislative intent when that agency possesses its own distinctive functional characteristics. *United States v. Radio Corp. of America*, 358 *U.S.* 334, 79 *S.Ct.* 457, 3 *L.Ed.*2d 354 (1959); *F. T. C. v. Cement Institute*, 333 *U.S.* 683, 68 *S.Ct.* 793, 92 *L.Ed.* 1010 (1948); *F. T. C. v. Texaco, Inc.*, 170 *U.S.App.D.C.* 323, 332–333, 517 *F.*2d 137, 146–147 (D.C.Cir.1975), *cert.* den. 431 *U.S.* 974, 97 *S.Ct.* 2939, 2940, 53 *L.Ed.*2d 1072 (1977) (F.T.C. and Federal Power Commission); *S. E. C. v. Jos. Schlitz Brewing Co.*, 452 *F.Supp.* 824, 828 (E.D.Wis.1978) (S.E.C. and Bureau of Alcohol, Tobacco and Firearms); *Warner-Lambert Co. v. F. T. C.*, 361 *F.Supp.* 948, 952–953 (D.D.C.1973) (F.T.C. and F.D.A.). Some courts have stressed that independent jurisdiction should be found in an agency where unique or special remedies are available. See, *e. g., So. Burlington v. Vermont Electric Power Co.*, 133 *Vt.* 438, 443, 344 *A.*2d 19, 21–22 (Sup.Ct.1974); *Umberfield v. Archuleta & La Plata Cty. School District No. 11*, 185 *Colo.* 165, 171–172, 522 *P.*2d 730, 734 (Sup.Ct.1974); *Oregon City Teachers Fed'n v. Oregon City Ed. Ass'n*, 36 *Or.App.* 27, 36–37, 584 *P.*2d 303, 309 (Ct.App.1978); see also *Seitz v. Duval Cty. School Bd.*, 346 *So.*2d 644, 646 (Fla.Dist.Ct.App.1977), *cert.* den. 354 *So.*2d 985 (Fla.1978) (Florida PERC); Comment, "Application of *Res Judicata* to Agencies with Parallel Jurisdiction," 52 *Den.L.J.* 595 (1975) (analyzing *Umberfield, supra* ). As for our own state, this principle is here claimed by the Attorney General to be illustrated by such cases as *In re Tenure Hearing of Grossman*, 127 *N.J.Super.* 13 (App.Div.), certif. den. 65 *N.J.* 292 (1974).

This court has nevertheless recognized that there are important goals to be achieved from the prudent and selective application in administrative proceedings of such doctrines as *res judicata*, collateral estoppel, and the single controversy rule. *Hinfey v. Matawan Reg. Bd. of Ed., supra*, 77 *N.J.* at 532. See *Lubliner v. Paterson Alcoholic Beverage Control Bd.*, 33 *N.J.*

428, 442 (1960) (*res judicata* and collateral estoppel); *Russell v. Tenafly Bd. of Adjustment*, 31 *N.J.* 58, 65–66 (1959) (*res judicata* ); *Trap Rock Industries, Inc. v. Sagner*, 133 *N.J.Super.* 99, 109 (App.Div.1975), aff'd by a divided court 69 *N.J.* 599 (1976) (*res judicata*, collateral estoppel and kindred doctrines). See also *Skulski v. Nolan*, 68 *N.J.* 179, 198–199 (1975). In *Hinfey v. Matawan Reg. Bd. of Ed., supra,* we spoke of achieving these goals in terms of "administrative comity," *viz*:

> [The] principles of comity and deference to sibling agencies are part of the fundamental responsibility of administrative tribunals charged with overseeing complex and manifold activities that are also the appropriate statutory concern of other governmental bodies. [Citations omitted.] This is a corollary application of the broader principle that where a court has concurrent, discretionary jurisdiction with another court or an administrative agency, the decision to exercise jurisdiction *vel non* should be fully responsive to the competence, expertise and status of the other tribunal. [Citations omitted.] Comity and deference to cognate tribunals are designed to assure that a controversy, or its most critical facets, will be resolved by the forum or body which, on a comparative scale, is in the best position by virtue of its statutory status, administrative competence and regulatory expertise to adjudicate the matter. [77 *N.J.* at 531–532.]

We previously alluded to the underlying principles of our modern constitutional structure of government that have resulted in a strong and centralized executive. As a matter of generality, legislative enactments in the administrative area presumably reflect this organic theory of our state government. Hence it is consistent with this constitutional philosophy to apply to administrative agencies, in appropriate situations, judicial rules conducive to the ends of intergovernmental compatibility and harmony, such as *res judicata*, collateral estoppel, the single-controversy doctrine and the like. Decisions have stressed that the policy considerations which support these judicial doctrines—namely, finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts,

confusion and uncertainty; and basic fairness—have an important place in the administrative field. See, *e. g., Hinfey v. Matawan Reg. Bd. of Ed., id.* at 532. See also *United States v. Utah Construction & Mining Co.,* 384 *U.S.* 394, 421–422, 86 *S.Ct.* 1545, 1559–1560, 16 *L.Ed.2d* 642, 660–661 (1966); *Pettus v. American Airlines, Inc.,* 587 *F.2d* 627, 628–629 (4 Cir. 1978); *Bowen v. United States,* 570 *F.2d* 1311, 1322–1323 (7 Cir. 1978); *Paramount Transport Sys. v. Chauffeurs, Teamsters & Helpers, Local 150,* 436 *F.2d* 1064, 1065–1066 (9 Cir. 1971); *Safir v. Gibson,* 432 *F.2d* 137, 143–144 (2 Cir. 1970), *cert.* den. 400 *U.S.* 850, 91 *S.Ct.* 57, 27 *L.Ed.2d* 88 (1970); *Painters Dist. Coun. No. 38, Etc. v. Edgewood Contracting Co.,* 416 *F.2d* 1081, 1084 (5 Cir. 1969); *Gale v. State Board of Equalization,* 264 *Cal.App.2d* 689, 692, 70 *Cal.Rptr.* 469, 470 (Ct.App.1968); *K. Davis, Administrative Law Treatise* § 18.02 at 427 (1976 Supp.); Note, "Administrative Collateral Estoppel: The Case of Subpoenas," 87 *Yale L.J.* 1247, 1250–1253 (1978); Comment, "Application of *Res Judicata* to Agencies with Parallel Jurisdiction," 52 *Den.L.J.* 595 (1975) (analyzing *Umberfield, supra* ). *Cf.* Sewall, *supra,* 6 *Ind.L.Rev.* at 472–474 (discussing the permissibility of overlapping agency jurisdiction); Note, "Preclusive Effect," *supra,* 64 *Iowa L.Rev.* 339. It seems evident that such principles, while basically judicial in origin, have especial relevance for administrative adjudications.

Focusing upon the appeal at hand, these principles should have been invoked in this case at the earliest stages of the dispute, as well as in its terminal phases; they should have been applied not only to resolve the controversy between the parties but also to avoid the collision between the two tribunals. PERC, in exercising its discretion whether to proceed or not in the matter, should have been governed by these considerations. Its first concern should have been whether or not the common issue before both agencies, here the unfair practice, was either the sole or major issue in dispute or a dominating issue in the sense that its determination would have served either to moot

the remaining questions in dispute or to have affected substantially their resolution. Another important factor which PERC should have weighed was whether the allegations clearly involved important issues and interests which extended beyond the immediate parties. A further consideration for PERC was whether the common issue was clearly severable from the balance of the controversy and would thus have permitted non-duplicative factual and legal determinations. A related inquiry should have been whether the claims, if ultimately vindicated, would obviously have required specialized or particularized remedial relief not generally available in the other agency. The single-controversy doctrine constituted a further key consideration, i. e., whether the common issue could have been fairly, competently and fully tried and adjudicated together with and as a constituent part of all other issues in the case before one agency so that fragmented and repetitious actions would be avoided, all relevant concerns addressed and the entire controversy concluded in a single proceeding. *Cf. Tevis v. Tevis*, 79 *N.J.* 422, 434 (1979).

■■■ We are satisfied that, applying these broad standards, PERC should have stayed its hand at the threshold stages of the case as presented to it. The controversy here presented multiple and mixed issues involving the statutory concerns of both agencies. Nevertheless, the basic dispute involved primarily civil service law. The firefighters here claimed to be entitled to promotion under civil service by virtue of merit and fitness, demonstrated in part by their performance on the promotional examinations conducted under civil service. *Cf. Pringle v. N.J. Civil Service Dep't*, 45 *N.J.* 329 (1965). The anti-union bias charge was not the sole, major, or dominating issue. The factual circumstances relating to this issue, moreover, were the same as those raised in the civil service proceedings and the facts pertaining to these charges were inseparable. Additionally, it was not shown or suggested at the outset of the case that any important interests other than those of the immediate

parties were implicated. Nor, in terms of the broad remedial powers of the Civil Service Commission, did it appear that redress as sought by the claimants would have been inadequate. Finally, there was a substantial likelihood that the entire controversy could have been heard fairly and fully by the Civil Service Commission in a single proceeding with sufficient expertise and competence to account for all genuine concerns including those occasioned by the unfair labor practice charge. In short, we conclude that it would have been the proper and politic course at the outset of these proceedings for PERC to have stayed its own hearings until after the Civil Service Commission had reached a determination in the matter.

Such abstention by PERC, however, did not in fact occur. There was a full hearing upon the complaints before PERC, which now argues that neither it nor the parties should have been bound by the Civil Service Commission's determination. PERC contends that the Civil Service Commission hearing did not address squarely the issue of anti-union prejudice as an unfair practice and, further, that the parties did not fully litigate this issue. We reject this argument for the same reasons as expressed by the Appellate Division, which determined, on the record of the proceedings before the Civil Service Commission, that "the issue of prejudice or lack of good faith due to union activities was fully and fairly litigated by the parties in a formal, adversarial proceeding." 162 *N.J.Super.* at 29–30. That court, *id.* at 30, 392 *A.*2d 187, found these reasons sufficient to apply collateral estoppel to bind the parties to the factual determinations reached by the Civil Services Commission, citing as supporting authority *Texaco, Inc. v. Operative Plasterers and Cement Masons Int'l Union, Local 685, AFL–CIO,* 472 *F.*2d 594 (5 Cir. 1973), *cert.* den. 414 *U.S.* 1091, 94 *S.Ct.* 721, 38 *L.Ed.*2d 548 (1973); *International Wire v. Local 38, Int'l Brotherhood of Elec. Workers,* 475 *F.*2d 1078 (6 Cir. 1973), *cert.* den. 414 *U.S.* 867, 94 *S.Ct.* 63, 38 *L.Ed.*2d 86 (1973); *Paramount Transport Systems v. Chauffeurs, Teamsters & Helpers, Local*

*150*, 436 *F.*2d 1064 (9 Cir. 1971); and *F.T.C. v. Texaco, Inc.*, 170 *U.S.App.D.C.* 323, 333, 517 *F.*2d 137, 147 (D.C.Cir.1975), *cert.* den. 431 *U.S.* 974, 97 *S.Ct.* 2939, 2940, 53 *L.Ed.*2d 1072 (1977).

In a similar vein may be noted PERC's contentions that the decision of the Civil Service Commission was wrong both factually and legally. PERC asserts that anti-union bias constituted a sufficient causative factor in the denial of the promotions to constitute an unfair practice and to justify corrective administrative relief. We are not, however, called upon in this appeal to ascertain in what degree of causation anti-union bias as an unfair practice would serve to vitiate otherwise valid governmental actions involving public employees. *Cf. Mt. Healthy Bd. of Ed. v. Doyle*, 429 *U.S.* 274, 287, 97 *S.Ct.* 568, 575–576, 50 *L.Ed.* 2d 471, 484 (1977). We acknowledge that PERC makes the argument that its adjudication of the unfair practice issue was qualitatively superior to that of the Civil Service Commission. Nevertheless, we concur with the Appellate Division that the civil service determination was supportable in every respect. 162 *N.J.Super.* at 29–30, 392 *A.*2d 187. There was moreover, no appeal from the final determination of the Civil Service Commission; thus the adequacy of its factual and legal conclusions is not here genuinely or directly challenged.

On this facet of the appeal, dealing with the comparative quality of each agency's adjudication, it is of significance that recent legislation, *L.* 1978, *c.* 67; *N.J.S.A.* 52:14F–1 *et seq.*, may go far to remove this concern as a substantial consideration in sorting out conflicting jurisdictional claims. The act creates an independent Office of Administrative Law and provides for the assignment of independent hearing officers, denominated "administrative law judges" to hear and make recommended determinations in contested administrative agency cases. *N.J.S.A.* 52:14F–5, –6, –8. The salutary purpose of the statute "is to improve the quality of justice with respect to administrative hearings . . . [,] to eliminate conflict of interests for hearing officers, promote due process, expedite the just conclu-

sion of contested cases and generally improve the quality of administrative justice." *Statement of Purpose, L.* 1978, *c.* 67. The administrative law judges will be independent of the administrative agency whose jurisdiction is involved. The judge assigned to a contested case presumably will have the expertise, knowledge, training and background to qualify him or her to preside over the particular case. *N.J.S.A.* 52:14F–6. When, as in the present case, there are involved multiple issues implicating different administrative disciplines or domains, the statute contemplates the designation of an individual administrative law judge, or another "who may be specially appointed," with the special qualifications commensurate with the demands of the case itself. *N.J.S.A.* 52:14F–5 m, –6.[1] It is anticipated that the findings and recommended dispositions of the administrative law judges will carry substantial weight in the final determination to be made by administrative agencies. See, *e. g., N.J.A.C.* 19:65–16.5 (proposed) at 11 *N.J.R.* 487 (1979). While PERC is not one of the agencies expressly included for coverage under the new Office of Administrative Law Act, it is obvious that PERC's jurisdictional concerns would be given careful and appropriate attention by an administrative law judge in any contested proceeding before another administrative agency when such concerns are raised; and, indeed, PERC itself has the express power under the statute to request the assignment of an administrative law judge to hear and resolve any of its cases. *N.J.S.A.* 52:14F–8.

There is thus every reason to expect that the real or imagined qualitative gaps in the decisional process between different

---

[1] It is apparently recognized that cross-disciplinary controversies involving overlapping administrative jurisdiction may have to be dealt with from time to time on a consolidated basis in one proceeding presided over by a single administrative law judge. See *N.J.A.C.* 19:65–1.1 *et seq.* (proposed) at 11 *N.J.R.* 479–488 (1979); *N.J.S.A.* 52:14F–5, –6.

administrative agencies will in the immediate future become narrower and that cross-agency controversies will become more amenable to handling in a single agency proceeding by judges with a breadth of expertise, range of experience, and adjudicatory deftness sufficient to deal with all of the ramifications of the matter and to accommodate the genuine interests of any and all governmental bodies whose jurisdictional nerves are touched.

IV

The outcome in the instant case under all circumstances would require PERC to accord binding effect to the determination of the Civil Service Commission that anti-union bias was not a substantial factor in the decision of the appointing authority to deny promotions to the petitioners. The Appellate Division saw fit to set aside PERC's subsequent determination on the ground that that agency was bound to follow the earlier determination by the Civil Service Commission under principles of collateral estoppel, or "issue preclusion," as well as under the single controversy doctrine. 162 *N.J.Super.* at 31. Accordingly, the court reversed and set aside the subsequent PERC order. We agree with that result, but would modify the judgment of the court in one respect. The court stated that, in the future, controversies such as that involved in this appeal as a matter of course should proceed initially before PERC rather than before the Civil Service Commission. 162 *N.J.Super.* at 32. We have, however, pointed out by this opinion that such controversies invoke the discretionary jurisdiction of each administrative agency involved and that the appropriate exercise of that discretion should be in accordance with the relevant and important considerations here expounded. In this respect the ruling of the Appellate Division is not approved.

Accordingly, for the reasons set forth, the judgment of the court below is modified and, as modified, is affirmed. No costs.

PASHMAN, J., concurring in result.

While I concur in the result, I write to take exception to some of the majority's observations on accommodating the overlapping jurisdictions of the two agencies.

With the other members of the Court, I would hold that both the Civil Service Commission (CSC) and the Public Employment Relations Commission (PERC) possessed jurisdiction to pass upon the charges filed by the firefighters. I cannot agree, however, that in some cases only one of these bodies should be permitted to exercise that jurisdiction to the exclusion of the other. Rather, in light of the differing policies underlying the New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 *et seq.* (EERA), and the Civil Service Laws, *N.J.S.A.* 11:1–1 *et seq.*, aggrieved employees should always be entitled to obtain redress from either agency. They therefore may proceed before both bodies, although they may not relitigate factual issues that have been resolved by one agency.

In the present case, CSC found as a fact that the failure to promote Sarapuchiello and Krejsa was not motivated by anti-union sentiment. This determination was identical to the factual question presented by the pending PERC complaint. The firefighters were therefore estopped from relitigating this issue before PERC. Since PERC's adjudication of an unfair employer practice and the remedy it granted the firefighters were predicated upon its finding of anti-union bias, both must be vacated.

I

Both PERC and CSC possessed jurisdiction to pass upon the validity of the municipal actions here challenged. Sarapuchiello and Krejsa claim they were denied promotions solely because they exercised their right to participate in union activities. See *N.J.Const.* (1947), Art. I, par. 19; *N.J.S.A.* 34:13A–5.3. If true, the denials would clearly constitute unfair employer practices. *N.J.S.A.* 34:13A–5.4(a)(1), (3). Through an amendment to the

EERA, *L.*1974. *c.* 123, § 1, the Legislature vested PERC with "exclusive power" to prevent and remedy such unfair practices.[1] *N.J.S.A.* 34:13A–5.4(c); see *Galloway Tp. Bd. of Educ. v. Galloway Tp. Educ. Ass'n*, 78 *N.J.* 25, 33 (1978); *Patrolmen's Benev. Ass'n v. Montclair*, 70 *N.J.* 130, 136 (1976). Thus PERC possessed jurisdiction to resolve the charges filed by the firefighters.

The power to entertain the firefighters' challenge to the municipal conduct has also been delegated to CSC. Discrimination based upon an individual's participation in union activities is "arbitrary and illegal conduct by an employer," and therefore an aggrieved employee may seek review of the municipality's actions before CSC. See *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper*, 56 *N.J.* 579, 583–585 (1970). The Legislature's grant of jurisdiction over unfair practices to PERC did not divest CSC of its power to pass upon such complaints. *N.J.S.A.* 34:13A–5.3 explicitly provides:

> Nothing herein shall be construed to deny to any individual employee his rights under Civil Service laws or regulations.

Those rights include that of CSC review of allegedly arbitrary employment decisions by a local authority. See *N.J.S.A.* 11:25–1; *N.J.A.C.* 4:1–5.1 to –5.16.

## II

Having correctly concluded that both CSC and PERC possessed jurisdiction to hear the firefighters' complaints, the majority relies upon *Hinfey v. Matawan Reg. Bd. of Educ.*, 77 *N.J.* 514 (1978), to determine which of the two agencies should have

[1]The grant of jurisdiction was made in response to this Court's holding in *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper*, 56 *N.J.* 579 (1970), that PERC lacked such power under the original act, *L.*1968, *c.* 303. See *Galloway Tp. Bd. of Educ. v. Galloway Tp. Educ. Ass'n*, 78 *N.J.* 25, 33 (1978).

abstained from exercising any jurisdiction. Such reliance is misplaced. By assuming that only one agency should have ruled upon the firefighters' charges, the majority has overlooked the solution that is most in keeping with the intent of the Legislature: that PERC and CSC possess concurrent and non-exclusive jurisdiction. Both can pass upon the legality of the municipality's actions. Should one agency find a violation of law pertinent to its expertise and order a remedy, complainants would be entitled to that remedy regardless of the result reached by the other agency.

### A

Although the goals underlying the EERA and the Civil Service Laws are complementary, they are not in all respects identical. The unfair practice provisions of the EERA, see *N.J.S.A.* 34:13A–5.4(a)(1)–(7), are intended to insure that public employers do not restrain, coerce or interfere with employees in the exercise of their constitutional and statutory rights to join unions and negotiate collectively. See *N.J.Const.* (1947), Art. I, par. 19; *N.J.S.A.* 34:13A–5.3, –5.4. To reach these goals the Legislature vested PERC, which possesses expertise in public employment relations, with "exclusive power" to determine whether an unfair practice has occurred and to remedy any such illegal conduct. See *N.J.S.A.* 34:13A–5.4(c); *supra* at 39–40.

The Civil Service Laws are not designed to protect the associational rights of public employees. This legislation is specifically intended to secure an efficient public service in state and local government. See, *e. g., Mastrobattista v. Essex Cty. Pk. Comm'n*, 46 *N.J.* 138, 145 (1965); *Campbell v. Dep't of Civil Service*, 39 *N.J.* 556, 583 (1963); *Prosecutor's Detectives and Investigators Ass'n v. Hudson Cty. Bd. of Chosen Freeholders*, 130 *N.J.Super.* 30, 41–42 (App.Div.1974), certif. den., 66 *N.J.* 330 (1974); *Newark v. Dep't of Civil Service*, 68 *N.J.Super.* 416, 424–425 (App.Div.1961). To achieve this objective, all permanent appointments in the classified service, including promo-

tions, must be based on merit as determined by competitive examinations wherever practicable. See *N.J.Const.*, Art. VII, § 1, par. 2; *N.J.S.A.* 11:4–2, :21:3 & :22–30. Once permanently appointed, an employee cannot be removed except for "just cause" determined after written notice of the charges and a hearing before the local authority. See *Handlon v. Belleville*, 4 *N.J.* 99, 106 (1950); *Prosecutor's Detectives and Investigators Ass'n*, 130 *N.J.Super.* at 42; *N.J.S.A.* 11:22–38; *N.J.A.C.* 4:1–16.-8(a). The main task of the CSC is thus to insure that appointments and promotions are grounded upon the "merit and fitness" principle, see *N.J.Const.* (1947), Art. VII, § 1, par 2, rather than arbitrary considerations. See, *e. g., Mastrobattista*, 46 *N.J.* at 145; *Campbell*, 39 *N.J.* at 583; *Prosecutor's Detectives and Investigators Ass'n*, 130 *N.J.Super.* at 41–42; *Newark v. Dep't of Civil Service*, 68 *N.J.Super.* at 424.

Since PERC and CSC review public employment decisions for different purposes, both bodies must be allowed to pass upon actions which allegedly contravene their respective statutory schemes. A CSC hearing is necessary to insure that the local authority did not violate the "merit and fitness" principle. A PERC hearing is necessary to determine whether the local authority committed an unfair employer practice. See, *e. g., Town of Dedham v. Labor Relations Comm'n*, 365 *Mass.* 392, 312 *N.E.2d* 548 (Sup.Jud.Ct.1974); *City of Albany v. Public Employment Rel. Bd.*, 57 *A.D.2d* 374, 395 *N.Y.S.2d* 502 (App.Div.1977), aff'd o. b., 43 *N.Y.2d* 954, 404 *N.Y.S.2d* 343, 375 *N.E.2d* 409 (Ct.App.1978); *cf. Alexander v. Gardner-Denver Co.*, 415 *U.S.* 36, 94 *S.Ct.* 1011, 39 *L.Ed.2d* 147 (1974).

Under the majority's approach, a victim of conduct arguably violating both the EERA and the Civil Service Laws might be forced to decide which of his claims is stronger and proceed before the relevant agency. He would thus be foreclosed from having each body adjudicate the particular aspects of employer conduct which fall within its field of expertise. In contrast, a

holding that both agencies may exercise jurisdiction would relieve aggrieved employees from this difficult, unnecessary and premature decision. Such a ruling would also permit each agency to fulfill its unique legislative mandate. It is therefore not surprising that courts faced with this and analogous situations have generally opted for concurrent jurisdiction. See *Alexander v. Gardner-Denver Co.; Carey v. Westinghouse Electric Corp.*, 375 *U.S.* 261, 84 *S.Ct.* 401, 11 *L.Ed.2d* 320 (1964); *Tipler v. E. I. duPont deNemours and Co., Inc.*, 443 *F.2d* 125 (6th Cir. 1971); *Town of Dedham v. Labor Relations Comm'n, supra; City of Albany v. Public Employment Rel. Bd., supra.*

Taken as a whole, the language of the EERA dictates this result. The Legislature has accorded PERC "exclusive power" to deal with unfair employer practices. *N.J.S.A.* 34:13A–5.4(c). It has also ordained that nothing contained in the EERA shall be construed to deny any employee his rights under the Civil Service Laws. *N.J.S.A.* 34:13A–5.3. The majority's reasoning negates both provisions. According to the majority, PERC must surrender its "exclusive power" over unfair practices in some instances. In others, an employee will be compelled to forfeit his right to CSC review of municipal actions.

Concurrent jurisdiction is not to be eschewed merely because an employee may be granted a remedy in one forum and denied relief in the other. Contrary to the majority's assertions, such results would not necessarily constitute "inconsistent" adjudications. A dismissal by PERC of the employee's charges, for instance, would only demonstrate that the employer did not violate the EERA. It would not establish that the employer's conduct was in keeping with the Civil Service Laws. If municipal conduct violates either statute, the employee is entitled to some form of redress. If relief is deemed warranted by both agencies, the agency later granting relief could structure its order to avoid employee windfalls.

Finally, concurrent jurisdiction would avoid the practical problems that will ensue when other agencies attempt to follow the precepts announced in the majority opinion. When a body is called upon to examine conduct which arguably violates statutes administered by other agencies, the majority states that it first must make preliminary findings regarding "comity and deference," *Hinfey*, 77 *N.J.* at 531. In the majority's own words, these determinations include

> whether or not the common issue before both agencies, here the unfair practice, was either the sole or major issue in dispute or a dominating issue in the sense that its determination would have served either to moot the remaining questions in dispute or to have affected substantially their resolution. A further consideration [would be] whether the common issue was clearly severable from the balance of the controversy and would thus have permitted non-duplicative factual and legal determinations. A related inquiry [would be] whether the claims, if ultimately vindicated, would obviously have required specialized or particularized remedial relief not generally available in the other agency. * * [A] further key consideration [would be] whether the common issue could have been fairly, competently and fully tried and adjudicated together with and as a constituent part of all other issues in the case before one agency so that fragmented and repetitious actions would be avoided, all relevant concerns addressed and the entire controversy concluded in a single proceeding. [*Ante* at 34 (citations omitted)]

Because these assessments are highly subjective, situations may arise in which both—or, worse yet—neither agency will retain jurisdiction. Even if one body adjudicates the matter, the majority's test threatens to be more intricate and time-consuming than a hearing on the merits. Even after an agency renders this preliminary decision, a court may later determine that it acted erroneously, further delaying the ultimate resolution.[2]

---

[2]As the majority recognizes, see *ante* at 37, the recently created Office of Administrative Law, see *L.*1978, *c.* 67, *N.J.S.A.* 52:14F–1 *et seq.*, does not have the power to assign a single administrative law judge to hear evidence regarding a controversy which involves both CSC and PERC. *N.J.S.A.*

The majority's attempt to apply the theoretical framework established in *Hinfey* is unconvincing. That case decided which of two agencies should entertain complaints charging violations of the same subject matter—sex discrimination in public school curricula. Unlike the present case, the conduct challenged in *Hinfey* would have been scrutinized with identical legal standards by either the Division on Civil Rights or the Commissioner of Education. Compare *Hinfey*, 77 *N.J.* at 523–524 (standard under Law Against Discrimination) with 77 *N.J.* at 525–526 (standard under education laws). It was therefore fitting that the parties in *Hinfey* were required to appear only before the Commissioner who possessed greater expertise in combatting discrimination in public schools. See *id.* at 532–533.

### III

I agree with the majority that it would be wasteful of time and agency resources if employees were allowed to relitigate before one body factual issues that had been decided by another agency. For the reasons stated in Part II, however, it would be unwise to solve this problem by prohibiting an employee from appearing before more than one agency. Rather, an employee should be precluded simply from relitigating *factual* issues which were passed upon at a previous hearing. Since determinations of these factual questions by either agency are adequate for the purposes of the other, there is no need to consider application of the subtle "principles of comity and deference to sibling agencies." *Hinfey*, 77 *N.J.* at 531.

To determine which of two equally competent tribunals should proceed first, a rule of convenience and efficiency should pre-

---

52:14F–8(a). While the possibility exists for joint hearings with PERC's consent, see *id.*, it is equally clear that the Legislature has failed to insure against redundant and unnecessary hearings.

vail.[3] The agencies involved should simply proceed in the order in which the complaints were filed. The second agency would retain jurisdiction but stay its hand until the proceedings in the first agency have terminated. Simple in its application, this rule would permit an aggrieved employee to choose which claim he wishes to present first and avoid any inter-agency "race to judgment." Each agency would determine whether a violation of its own law had occurred based on facts found by the first agency. The second agency could also hear evidence and make supplemental findings as to factual matters that were not actually decided in the earlier proceeding.

In the present case, CSC found as a fact that the failure to promote Sarapuchiello and Krejsa was not motivated by anti-union animus. This finding was supported by substantial credible evidence. Consequently, the firefighters were estopped from completely relitigating the anti-union bias issue before PERC. PERC's award of promotion and full back pay was predicated upon its finding that anti-union sentiment had sparked the municipality's actions. This finding also underlay its adjudication of an unfair employer practice. PERC's judgment must therefore be vacated in its entirety.

SCHREIBER, J., concurring and dissenting.

The majority opinion is founded on an unwarranted statutory interpretation that the court may dictate when an administrative agency must *not* hear a matter. Except for constitutional and statutory [1] requirements, courts do not have the authority to

---

[3] I realize, as does Justice Schreiber in his separate opinion, that the doctrine of the separation of powers forbids the Judiciary from dictating to an administrative agency when it must decline to exercise its legislatively delegated jurisdiction. See *post* at 46–48 (Schreiber, J.) However, that same doctrine prevents an agency from circumventing our application of collateral estoppel to its adjudicatory determinations. I offer the "rule of convenience and efficiency" as a suggested salutary response to such application.

[1] Judicial review would be in order when an administrative agency processed a matter obviously in conflict with the statutory authority and legislative intent. Such action would clearly be arbitrary and capricious.

prohibit an administrative agency from exercising its jurisdiction. The majority has not referred to any such constitutional or statutory provisions and we can find none.[2]

When a statute entrusts an administrative agency with the enforcement of an act and is silent on when that agency may or may not proceed, the likelihood of an abuse of discretion is substantially less when the agency chooses to process the claim than when it exercises its discretion not to hear the matter. That is because facially at least the agency is charged with performing the functions entrusted to it by the Legislature. Although that administrative agency may under some circumstances properly decide not to hear a matter, such a decision rests with the agency. That is what occurred in *Hinfey v. Matawan Reg. Bd. of Ed.*, 77 *N.J.* 514 (1978). However, that is far different from a court preventing an agency from carrying out its delegated authority to hear a case.

In the absence of a constitutional or statutory base, this Court has no inherent power to promulgate rules of procedure for administrative agencies. The Constitution vests in the Supreme Court rulemaking power only for the courts of the State, *N.J. Const.* (1947), Art. VI, § 2, par. 3, not for executive and legislative agencies. Necessarily implicated in this problem is the doctrine of separation of powers. See *N.J.Const.* (1947), Art. III, par. 1; W. Mountain, "The Role of Judicial Activism: Neither Sword Nor Purse," 10 *Seton Hall L.Rev.* 6 (1979).

In the case before the Court, the statutes are silent on when or whether either the Public Employment Relations Commission (PERC) or the Civil Service Commission (Civil Service) may defer action in connection with an "unfair practice" or improper

---

[2]The majority is unsound when it contends that, when an agency does not have exclusive jurisdiction, it must exercise discretion in deciding whether to hear a case. Its discretion does not depend upon exclusivity of jurisdiction over the subject matter.

promotion charges. Nor are we called upon to decide whether, under their respective statutes, either agency has the authority to refuse to process such claims when presented to them. See *Hinfey v. Matawan Reg. Bd. of Ed.*, 77 *N.J.* at 536 (Schreiber, J., concurring). Neither agency here has deferred action and both have processed the claims. Under these circumstances, those issues need not be addressed.

Petitioners Krejsa and Sarapuchiello asserted *two different claims,* both of which arose out of the refusal of the Hackensack Fire Department to promote them to the rank of lieutenant. Civil Service and PERC had jurisdiction over different aspects of this episode. Recognition of the existence of this dichotomy is essential to an understanding and resolution of the issues in this case.

Civil Service is the statutorily designated agent responsible for enforcing the constitutional obligation that promotions of employees having civil service status "be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive . . . ." *N.J.Const.* (1947), Art. VII, § 1, par. 2. See also *N.J.S.A.* 11:21–1 *et seq.* In the first instance, it is the public employer who should promote "only according to merit and fitness." *N.J.S.A.* 40A:14–9.4; *N.J.S.A.* 11:21–3. In fulfilling that duty the public employer must weigh the relative qualifications of applicants, disclosed in part by results of written, oral and performance tests and by evaluation of their education, training, experience and any other appropriate measure of fitness. *N.J.S.A.* 11:21–3; *N.J.A.C.* 4:1–8.9. To be factored in are the employee's records, including annual employee evaluations. *N.J.A.C.* 4:1–8.4; *N.J.A.C.* 4:1–20.2. In this weighing process no consideration may be given to political or religious affiliations or opinions, or to race, color or national origin. *N.J.S.A.* 11:17–1; *N.J.A.C.* 4:1–8.10. An employee disappointed with the public employer's choice may appeal to Civil Service for its review to

assure that the promotion has been predicated on merit and fitness.

On the other hand, the Legislature has vested PERC with jurisdiction to determine whether a public employer has been guilty of discrimination against an employee "in regard to hire or tenure of employment or any term or condition of employment [so as] to encourage or discourage employees in the exercise of the rights guaranteed to them [by the PERC statute]." *N.J.S.A.* 34:13A–5.4(a)(3). One such guaranteed right is the employee's right to join and assist a labor organization. *N.J.S.A.* 34:13A–5.3; *N.J.Const.* (1947), Art. I, par. 19. Violation of that right constitutes an "unfair practice." *N.J.S.A.* 34:13A–5.- 4(c). The statute also provides that PERC "shall have exclusive power . . . to prevent anyone from engaging in any unfair practice" and that PERC may, upon a finding of an "unfair practice," order the public employer to cease and desist from that practice "and to take such reasonable affirmative action as will effectuate the policies" of the New Jersey Employer-Employee Relations Act. *N.J.S.A.* 34:13A–5.4(c).

These statutes repose in Civil Service and PERC jurisdiction over *different* legal issues. Civil Service's concern is whether an individual has been promoted on the basis of merit and fitness. PERC, on the other hand, focuses on whether an "unfair practice" has occurred.

When Civil Service determines whether a promotion was proper, it weighs factors which may not be identical with those that PERC inquires into in its "unfair practice" inquiry. Civil Service may, of course, examine anti-union animus in deciding whether an employee's promotion was denied on the basis of some reason other than merit and fitness. However, consideration of the existence of an anti-union animus does not mean that Civil Service has the authority to determine whether or not an "unfair practice" as defined in *N.J.S.A.* 34:13A–5.4 has been committed by the public employer. That problem is for PERC. To hold otherwise would entrust to Civil Service the formulation

of standards of "unfair practice"—a result which would clearly contravene the legislative purpose of vesting PERC with the authority to fix standards and criteria of unfair labor practices applicable to all public employees, whether or not classified under Civil Service. See *Dedham v. Labor Relations Comm'n*, 365 *Mass.* 392, 312 *N.E.2d* 548 (Sup.Jud.Ct.1974). The uniform statutory application of the PERC law and the benefit of having a specialized agency whose function it is to interpret and apply that statute would be lost. See Comment, "Application of Res Judicata to Agencies with Parallel Jurisdiction," 52 *Denver L.J.* 595 (1975).

A similar rationale also applies to Civil Service's jurisdiction over promotions of civil service employees. The Legislature has expressly delegated to Civil Service the duty to determine ultimately whether the promotion was proper and based on merit and fitness. Its expertise is to be applied in the process of balancing the several factors which determine the respective qualifications of the candidates for promotion. Although PERC has been delegated the exclusive power to prevent a public employer from engaging in any "unfair practice," *N.J.S.A.* 34:13A–5.4, that power is not authority for PERC to determine whether a civil service employee merited a promotion because of superior merit and fitness.

In exercising their different statutory mandates, Civil Service and PERC may reach conflicting conclusions. In determining whether an individual has been denied a promotion on the basis of merit and fitness, Civil Service may conclude, as it did here, that anti-union animus was not a factor. On the other hand, in determining whether an "unfair practice" has occurred, PERC may conclude, as it did here, that petitioners were passed over for promotions because of their union activity. Given the present legislative scheme and procedural framework, such conflicts, although undesirable, will occur.

When factual findings of different agencies administering different statutes conflict, courts have upheld those respective findings, recognizing that the legal issues are not identical. In

*Tipler v. E. I. duPont deNemours & Co.*, 443 *F.*2d 125, 128–129 (6 Cir. 1971), the Equal Employment Opportunity Commission had found there was reasonable cause to believe an employee had been discharged because of race and the employee instituted a suit against his employer predicated upon violation of Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* §§ 2000e *et seq.* The Court held the suit was maintainable, notwithstanding the fact that the NLRB had previously rejected the employee's claim that the same racial discrimination constituted an unfair labor practice. The court bottomed its decision on the ground that the statutes, Title VII of the Civil Rights Act and the National Labor Relations Act, had different purposes and demanded separate inquiries.

See also *NLRB v. Pacific Intermountain Express Co.*, 228 *F.*2d 170 (8 Cir. 1955), *cert.* den. 351 *U.S.* 952, 76 *S.Ct.* 850, 100 *L.Ed.* 1476 (1956), holding NLRB entitled to rule on unfair practice despite holding by the Industrial Commission of Missouri that plaintiff had been discharged for cause; *Lane v. Railroad Retirement Bd.*, 185 *F.*2d 819 (6 Cir. 1950), where the decision by the Railroad Retirement Board that plaintiff did not have an employee status with a railroad under the Railroad Retirement Act on August 29, 1935, was upheld despite a prior determination by the National Railroad Adjustment Board that plaintiff had an employee status with the same railroad on that date under the Railway Labor Act; *Thompson v. Flemming,* 188 *F.Supp.* 123, 125–126 (D.Or.1960), wherein a finding by the Veterans Administration of disability preventing plaintiff's engaging in "substantially gainful employment" held not binding on Social Security Administration which found plaintiff able to engage in "substantial gainful activity"; *Albany v. Public Employment Relations Bd.*, 57 A.D.2d 374, 395 *N.Y.S.*2d 502 (App. Div.1977), aff'd o. b. 43 *N.Y.*2d 954, 404 *N.Y.S.*2d 343, 375 *N.E.*2d 409 (Ct.App.1978), holding that the Public Employment Relations Board had jurisdiction over an unfair labor practice charge

of public employee's discharge although Civil Service Commission proceedings involving the same event were pending under a different section of the New York Civil Service Law; *Dedham v. Labor Relations Comm'n*, 365 *Mass*. 392, 312 *N.E.2d* 548 (Sup.Jud.Ct.1974), holding that decision of the Massachusetts Civil Service Commission, confirming a suspension for insubordination of a classified employee under the Civil Service Act because there was "just cause," was not binding on the Massachusetts Labor Relations Board in proceedings before it to decide whether the same episode constituted an unfair labor practice. *Contra, Pettus v. American Airlines, Inc.*, 587 *F*.2d 627 (4 Cir. 1978), appeal docketed, 444 *U.S.* 883, 100 *S.Ct.* 172, 62 *L.Ed*.2d 112 (1979); *Colorado Springs Coach Co. v. Colorado Civil Rights Comm'n*, 35 *Colo.App.* 378, 536 *P.2d* 837 (Ct.App.1975), cert. den. 424 *U.S.* 948, 96 *S.Ct.* 1420, 47 *L.Ed*.2d 355 (1976).

An administrative agency need not apply principles of collateral estoppel. Even in judicial proceedings, collateral estoppel is not automatically applicable, particularly when the first proceeding has not involved a full trial. *Restatement, Judgments* 2d § 88, Tentative Draft (1975); *Reardon v. Allen*, 88 *N.J.Super.* 560 (Law Div.1965). Distinctions between judicial and administrative proceedings accentuate the reasons for not treating the opinion of the administrative agency which first determines the facts as conclusive. Agencies at best act in quasi-judicial capacities; they need not apply rules of evidence and their findings, unless challenged, may not necessarily rest on competent evidence; and discovery, including the right of a party to subpoena witnesses and material, may not have been available, so that a party may not have had the ability to present all relevant material matter.

Additionally, application of collateral estoppel by the Court in this case contravenes the spirit, if not the letter, of *N.J.S.A.* 34:13A–5.4(c), providing that PERC "shall have *exclusive* power" to prevent anyone from engaging in an unfair practice.

(emphasis supplied). That exclusivity is effectively read out of the statute by binding PERC with Civil Service's fact finding. The majority seems to contend that the language in *N.J.S.A.* 34:13A–5.3, "[n]othing herein shall be construed to deny to any individual employee his right under Civil Service laws or regulations," eviscerates the grant to PERC of "exclusive" authority. The language in § 5.3, however, addresses a much narrower and different concern. Its purpose was to insure that the designation of a majority representative by a group of civil service employees would not be interpreted in a way which would strip an individual employee of his civil service right to have promotions and hiring based on merit and fitness. Adoption subsequently of *N.J.S.A.* 34:13A–5.4(c) in response to a judicial determination that PERC lacked the power to enjoin and remedy unfair labor practices indicates the legislative intent that these provisions were to serve different purposes. See *Burlington Cty. Evergreen Pk. Mental Hosp. v. Cooper,* 56 *N.J.* at 579 (1970).

It would, of course, have been desirable for Civil Service to consider the PERC findings and opinion on the issue of anti-union animus and its causal relationship, if any, in the promotion process. Though the PERC action occurred subsequent to the Civil Service order, the opportunity to consider the PERC decision would have been available if, upon petitioners' request or on its own motion, Civil Service had reopened and reconsidered the matter. *Cf. In re Intercontinental Radio Inc.,* [1975] 34 *Rad.Reg.*2d (P–H) 325, 327 n. 2. This was the very procedure which this Court had recommended in *Burlington Cty. Evergreen Pk. Mental Hosp.,* 56 *N.J.* 579, 600 (1970). There Civil Service, holding a provisional employee had no standing to question her discharge, had rejected her claim, asserting that she had been discharged because of union activities and she thereupon sought relief from PERC. We held that PERC had no jurisdiction to remedy the wrong (*N.J.S.A.* 34:13A–5.4 had not been enacted), but that Civil Service had

inherent power to reopen the proceedings and consider whether the employee's constitutional rights, *N.J.Const.* (1947), Art. I, par. 19, and statutory rights, *N.J.S.A.* 34:13A–5.3, to organize and join unions had been violated.

Though inconsistent factual findings of PERC and Civil Service may coexist, their respective orders may not, at least to the extent that they conflict. PERC has ordered that petitioners be promoted with a back pay differential and Civil Service has found that others, not petitioners, were entitled to the promotions.

The broader issue is whether the promotion was made on the basis of merit and fitness—not whether the public employer committed an "unfair practice." Since Civil Service, of necessity, had to consider the relative merit and fitness of all candidates, its decisionmaking involved more than the question of whether petitioners did not receive promotions because of anti-union animus. Under these circumstances, that part of PERC's remedy ordering the promotion and back pay should yield to Civil Service's overall expertise with respect to promotions. This is not to say that PERC's finding of an "unfair practice" is unfounded or that the other sanctions it imposed which do not affect the promotion should not remain intact. As previously noted, PERC has jurisdiction to hear and decide whether an "unfair practice" occurred, not Civil Service.

A somewhat comparable situation occurred in *Seitz v. Duval Cty. School Board*, 346 *So.*2d 644 (Fla.Dist.Ct.App.1977), *cert.* den. 354 *So.*2d 985 (Fla.Sup.Ct.1978), where a school board's dismissal of a tenured school teacher was upheld, though the teacher had filed an unfair labor practice charge under the Florida Public Employees Relations Act. The court held it was not "foreclos[ing] PERC's consideration of Seitz' claim that the Board, by denying her a substantive right secured by PERA, committed an unfair labor practice which should be remedied *otherwise than by reinstatement.*" 346 *So.*2d at 647 (emphasis supplied). The Florida PERC subsequently found an unfair

labor practice. It issued a cease and desist order, but did not order reinstatement. *Seitz v. Duval Cty. School Bd.* [1978], 3 *Pub.Emp.Barg.* (CCH) ¶ 40,538 (Fla. PERC).

Which administrative agency should prevail involves a significant policy judgment which should be determined by the Legislature. In the absence of express language in or clear implications from the statute, courts should defer to legislative action. The complete remedy rests with the Legislature. It has made one step in this direction. Contested cases before most administrative agencies are now being held by administrative law judges in the Office of Administrative Law. Under proposed regulations of that office, contested cases arising from different administrative agencies engaged in executing different statutes but involving common factual questions will be consolidated for purposes of hearings and findings. 11 *N.J.Reg.* 485 (1979) (to be codified in *N.J.A.C.* 19:65–14.1). Such proceedings should reduce, if not eliminate, conflicts between and among administrative agencies charged with enforcing laws which have overlapping subject matter. Although PERC is not subject to the hearing requirements of the Office of Administrative Law, it may voluntarily submit to its jurisdiction. *N.J.S.A.* 52:14F–8. PERC's use of this procedure should be encouraged in all situations where jurisdiction over phases of the same episode are lodged in other administrative agencies.

I have three other substantial difficulties with the majority opinion. First, the majority would have one agency hear the case to the exclusion of the other depending on the major or dominant issue in dispute. This test generally cannot as a practical matter be applied until the evidence has been produced and evaluated. Reliance on the allegations of the parties in whatever pleadings an agency may require will more often than not obscure the dominating issue. Further, there may be more than one major issue in dispute, one more appropriately within PERC's jurisdiction and the other within Civil Service's. The dominant issue in relation to the operative event may not be

known until the evidence is fully developed in proceedings before both agencies.

The majority also suggests that if an unfair practice charge involves issues of "wide public significance," PERC's jurisdiction should supersede that of another agency. (At 1158). Here again all types of problems which may arise are being put to rest without adequate consideration. Should the employee be deprived of his or her rights before another agency because of the precedential effect of a decision by PERC? What are the guidelines of "wide public significance"?

Lastly, in the instant case PERC determined that the City's refusal to promote were motivated by a desire to discipline the petitioners because of their labor activities, that the City's stated reasons for the refusals were pretextual, and that the anti-union animus was the sole or primary cause. The unfair labor practice being the sole or major complaint, PERC under one test espoused by the majority would have exclusive jurisdiction (at 1158), and yet it is foreclosed because of the majority's application of collateral estoppel—a principle which PERC had expressly rejected.

In conclusion, I would affirm the denial of enforcement of PERC's order directing promotion of the petitioners and awarding them back pay. The remainder of the PERC order should be affirmed, namely that the City should henceforth cease and desist from discriminating in regard to terms and conditions of employment on the basis of union activity and that the City post appropriate notice forms and notify PERC of compliance with its order.

Accordingly the judgment of the Appellate Division should be affirmed in part and reversed in part.

PASHMAN, J., concurs in result.

*For modification and affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and HANDLER—6.

*For affirmance in part and reversal in part*—Justice SCHREIBER—1.