775 A.2d 708

IN THE MATTER OF THE COMPLAINT PETITION OF FIVE MILE BEACH ELECTRIC RAILWAY CO., INC. AGAINST DELAWARE RIVER AND BAY AUTHORITY AND LION CORPORATION.

IN THE MATTER OF THE REQUEST FOR A CEASE AND DESIST ORDER BY FIVE MILE BEACH ELECTRIC RAILWAY CO., INC. AGAINST DELAWARE RIVER AND BAY AUTHORITY.

Superior Court of New Jersey
Appellate Division

Argued June 4, 2001—Decided July 5, 2001.

Before Judges WEFING, CUFF and LISA.

*Thomas F.X. Foley,* argued the cause for appellant, (*Fisher Fallon,* attorneys; *Mr. Foley* on the brief).

*Sue Kleinberg,* Deputy Attorney General, argued the cause for respondent, Department of Transportation, (*John J. Farmer, Jr.,* Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Ms. Kleinberg* on the brief).

Respondent Lion Corporation did not file a brief.

The opinion of the court was delivered by

LISA, J.A.D.

In these back-to-back appeals, consolidated for the purpose of this opinion, Five Mile Beach Electric Railway Co., Inc. ("FMB") appeals orders of the Commissioner of the New Jersey Department of Transportation ("DOT") dismissing its petitions and denying all relief it requested. FMB operates bus lines in Cape May County, including a trackless trolley service between Cape May City and the terminal of the Cape May Lewes Ferry, which is operated by the Delaware River and Bay Authority ("DRBA"). In 1996, New Jersey Transit ("NJT"), acting in cooperation with the DRBA, authorized a competitor of FMB, Lion Corporation ("Lion"), to operate this same route. The subject of one of FMB's appeals (A–4808–99T1) arises from its 1996 petition to the DOT alleging the NJT route created destructive competition, and its motion in 1999 to amend that petition to further allege that the DRBA's refusal to allow FMB's trolleys to stop at the ferry terminal and other conduct constituted additional acts of destructive competition by the DRBA. The subject of FMB's other appeal (A–4916–99T1) arises from its 2000 petition to the DOT, claiming the DRBA wrongly denied FMB access to the ferry terminal. The DOT dismissed the 1996 petition and denied the motion to amend it on the ground that NJT had exclusive jurisdiction and the DOT lacked jurisdiction. The DOT dismissed the 2000 petition on the ground of *res judicata.* On appeal, FMB argues the DOT did have jurisdiction over these matters and should not have dismissed. We disagree and affirm.

The DRBA, an agency created by interstate compact between New Jersey and Delaware, operates the Cape May–Lewes Ferry across the Delaware Bay. *N.J.S.A.* 32:11E–1. In the Summer of 1991, FMB, in cooperation with the DRBA, began providing its trolley service between the ferry terminal and downtown Cape May. FMB operated this route under a certificate of public

convenience and necessity issued by the DOT. The trolleys stopped at the terminal three times daily during that first year of service, charging a one-way fare of $4.

In 1992, NJT put out for bid a new bus route to provide service between the ferry terminal and Cape May City, the same route FMB already served with its trolleys. The new bus route was established at the urging of the DRBA, which wanted to increase its foot passenger ridership on the ferry. NJT awarded the contract to Lion, which was to run minibuses over the route, charging a one-way fare of $1.

At first, FMB did not consider the minibuses a serious competitive threat since passengers preferred the trolleys. Subsequently, however, the DRBA started selling "intermodal" tickets, which included the ferry and bus fare in one all-inclusive price. These tickets were good only for the bus service provided by Lion, under contract with NJT; if FMB accepted one of these tickets, the DRBA refused to refund FMB the price of the fare. The DRBA's inclusion of ground transportation in the ferry ticket price "was devastating to [FMB's] cash-only ridership from the Ferry to Cape May."

Bids for this bus service were received annually, and each year a one-year contract was awarded. Some years a "sister company" of FMB, owned and operated by the same principal, was awarded the contract. Lion obtained the 1999 contract. On September 7, 1999, the DRBA denied FMB permission to enter the terminal property to pick-up and discharge passengers.

On May 2, 1996, FMB filed a complaint petition with the DOT against the DRBA and Lion, alleging the DRBA, contrary to the authority granted it under statute, entered into a contract in April 1996 with Lion for Lion to provide bus service between the ferry terminal and the Cape May Bus Depot. FMB provided trolley service along the same route. FMB alleged the activities of the DRBA and Lion constituted destructive competition and demanded the DOT issue an order to the DRBA and Lion to cease the described bus service and the DOT require the DRBA and Lion to

file a petition with the DOT for operating authority before beginning any new bus service in Cape May County.[1]

On August 25, 1998, the DOT transmitted the matter to the Office of Administrative Law ("OAL") for a hearing as a contested case. On October 4, 1999, FMB moved in the OAL to amend its complaint petition. In addition to the allegations contained in the original petition, FMB accused the DRBA of "conducting destructive competition" by prohibiting appellant from picking up and discharging passengers at the terminal building; discouraging passengers from using FMB's services; and refusing to pay FMB for services provided on the DRBA's intermodal tickets in 1993, 1996, and 1998. The proposed amended petition requested an order that the DRBA cease all such practices.

ALJ Tassini issued an initial decision on December 6, 1999, granting the DRBA's motion to dismiss FMB's petition and denying FMB's motion to amend that petition, on the primary ground that the DOT lacked jurisdiction over the matter. FMB filed exceptions to the initial decision. On March 10, 2000, James Weinstein, Commissioner of the DOT, issued a final decision adopting the initial decision of ALJ Tassini substantially for the reasons set forth therein. On April 12, 2000, the DOT issued a dismissal order. FMB appeals from the part of the order that denied its motion to amend the petition.

On March 14, 2000, FMB filed a separate complaint petition with DOT, seeking an order against the DRBA to cease and desist in preventing FMB from picking-up and discharging passengers at the ferry terminal. In a letter dated April 7, 2000, the DOT dismissed the petition for reasons of *res judicata*, since the relief requested in the petition was identical to that which FMB had requested and been denied in the motion to amend the previous petition. The letter stated this was a final decision that could be

---

[1] DOT assigned this petition docket no. 96–082. On May 8, 1996 and March 19, 1997, FMB filed additional petitions, which were assigned docket nos. 96–054 and 97–018 respectively. FMB ultimately withdrew the latter two petitions.

appealed directly to the Appellate Division. FMB also appeals from that decision.

Relying on *N.J.S.A.* 27:25-8b,[2] ALJ Tassini found that where NJT contracts with a public or private entity, it has jurisdiction over the service contracted for and any destructive competition claim resulting from that contract. He noted that FMB's complaint petition related to the 1996 contract between the DRBA, Lion, and NJT. Since NJT was a party to that contract, he concluded that it had "exclusive administrative authority over matters relating to such contracts." Moreover, he found that because the petition related to service under the 1996 contract, it was moot. Thus, ALJ Tassini dismissed FMB's petition.

As to FMB's motion to amend the petition, the ALJ noted that the proposed amended petition alleged destructive competition in years in which NJT entered into contracts for bus service at the terminal. Accordingly, the claims under the proposed amended petition were within NJT's jurisdiction and "such claims are precluded by law from NJDOT's jurisdiction." The ALJ therefore denied FMB's motion to amend the petition.

The Commissioner adopted the initial decision substantially for the reasons set forth therein, agreeing with the ALJ that FMB's sole remedy was before NJT and that this remedy was "more than ample to protect [FMB's] interests."

I

 In reviewing an agency's final decision, the Appellate Division's role is a limited one. *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999).

> [T]he scope of judicial review of an agency's decision is restricted to four inquiries:
> (1) whether the agency's decision offends the State or Federal Constitution;
> (2) whether the agency's action violates express or implied legislative policies;

---

2 "The authority hereby given [NJT] ... with respect to fares and service, shall be exercised without regard or reference to the jurisdiction vested in [the DOT]...." *N.J.S.A.* 27:25-8b.

(3) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of relevant factors.

[*Ibid.* (quoting *Brady v. Board of Review,* 152 *N.J.* 197, 210–11, 704 *A.*2d 547 (1997)).]

Under the rules governing proceedings in the OAL, complaint petitions may be amended freely: "Unless precluded by law or constitutional principle, pleadings may be freely amended when, in the judge's discretion, an amendment would be in the interest of efficiency, expediency and the avoidance of over-technical pleading requirements and would not create undue prejudice." *N.J.A.C.* 1:1–6.2(9). Here, the ALJ refused to amend FMB's petition on the ground that the DOT lacked jurisdiction over either the original petition or the proposed amended petition. He found that NJT possessed jurisdiction over the matter. He therefore denied the motion because the amendment was "precluded by law." The Commissioner adopted the ALJ's initial decision. The 2000 petition was dismissed for the same reason. Accordingly, the propriety of the DOT's actions in refusing to permit amendment of the petition and in dismissing the 2000 petition turns on whether the DOT (rather than NJT) had jurisdiction over these matters.

As administrative agencies have proliferated, questions relating to conflicting jurisdiction of those agencies have increased. *City of Hackensack v. Winner,* 82 *N.J.* 1, 16, 410 *A.*2d 1146 (1980). The determination of whether an administrative agency has jurisdiction over a particular matter "is one of statutory construction, that is, determining the legislative intent." *Hinfey v. Matawan Reg'l Bd. of Educ.,* 77 *N.J.* 514, 529, 391 *A.*2d 899 (1978).

The DOT's jurisdiction is set forth in *N.J.S.A.* 48:2–13, as amended by the Reorganization Plan for the Board of Public Utilities and the Department of Transportation—1978 (reprinted after *N.J.S.A.* 48:2–1):

a. [The DOT] shall have general supervision and regulation of and jurisdiction and control over all public utilities as defined in this section and their property,

property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title.

The term "public utility" shall include every individual, copartnership, association, corporation or joint stock company, their lessees, trustees, or receivers ... that now or hereafter may own, operate, manage or control within this State any railroad, street railway, traction railway, autobus, charter bus operation, special bus operation ... subway ... under privileges granted or hereafter to be granted by this State or by any political subdivision thereof.

[*N.J.S.A.* 48:2–13.]

Under this grant of power, every bus company must obtain "a certificate of public convenience and necessity issued by the Commissioner of Transportation authorizing such operation upon a determination that such operation is in the public interest." *N.J.S.A.* 48:4–3(a). The Legislature also granted the DOT the power to revoke a certificate of public convenience and necessity, after notice and hearing, if it finds that

(a) the operation of autobus service ... will adversely affect the financial stability of operators rendering service in such area because of insufficient revenues, (b) the adverse effect upon the operators will result in improper or inadequate service to the public and (c) there will be sufficient autobus service to meet the requirements of public convenience and necessity even though one or more certificates of public convenience and necessity are revoked by [DOT].

[*N.J.S.A.* 48:4–7.]

NJT was created by the Public Transportation Act of 1979 ("the Act"), *N.J.S.A.* 27:25–1 to 34, to provide "efficient, coordinated, safe and responsive public transportation...." *N.J.S.A.* 27:25–2. The Act gives NJT the power to "enter into contracts with any public or private entity to operate motorbus regular route ... services...." *N.J.S.A.* 27:25–6(b). The Act exempts NJT from the "jurisdiction vested in the Department of Transportation by [*N.J.S.A.*] 48:2–21 [regulation of rates] ..." and 48:4–3 [issuance of certificates of public convenience and necessity]. *N.J.S.A.* 27:25–8(b). NJT sets the fares, after a hearing, for the bus routes it operates or contracts for. *N.J.S.A.* 27:25–8(d).

The Act also gives NJT jurisdiction over claims which allege that its bus routes create destructive competition: "The corporation [NJT] shall promulgate rules and regulations regarding procedures for hearings before the board of claims of destructive

competition arising from actions of the corporation. Such claims may be brought by private entities providing motorbus regular route service." *N.J.S.A.* 27:25–7(b). NJT promulgated such regulations under *N.J.A.C.* 16:74–1.1 to –2.4.

Thus, the Legislature has divided the jurisdiction for regulation of regular bus routes between the two agencies. The DOT has regulatory authority over all bus routes, except those operated or contracted by NJT. All NJT bus routes are regulated by NJT itself. Likewise, under *N.J.S.A.* 48:4–7, the DOT has jurisdiction over claims that bus routes cause destructive competition, except for NJT routes or those contracted by NJT. On the other hand, under *N.J.S.A.* 27:25–7, NJT has jurisdiction over all allegations that it or its carriers have created destructive competition.

■ Here, the bus route between the ferry terminal and Cape May City, which FMB alleged was in competition with its service, was contracted for by NJT. Thus, the record supports the DOT's finding that the bus route between the ferry terminal and Cape May City was an NJT route, over which NJT had exclusive jurisdiction. The DOT correctly concluded that it has no jurisdiction over FMB's original complaint petition.

II

■ We next address jurisdiction over the proposed amendment to the 1996 petition and the 2000 petition. The primary focus of the new allegations in the proposed amendment to the 1996 petition and the sole claim in the 2000 petition is that the DRBA was engaging in destructive competition by prohibiting FMB from picking up and discharging passengers at the ferry terminal. NJT's jurisdiction over destructive competition claims extends only to "claims of destructive competition arising from actions of [NJT]." *N.J.S.A.* 27:25–7(b). This allegation against the DRBA relates not to the NJT route to the ferry terminal, but rather to the stops made on FMB's DOT route to the terminal. Nor is NJT the agency that prohibited FMB from stopping at the terminal. Even further removed from NJT's jurisdiction is FMB's allegation

in the proposed amended petition that the DRBA refused to pay FMB for the intermodal ferry tickets that FMB accepted on its trolleys. Accordingly, contrary to the DOT's finding, NJT does not have jurisdiction over either the additional allegations in the proposed amended petition or the 2000 petition.

■ The question remains whether the DOT has any jurisdiction over the DRBA's actions in prohibiting FMB from stopping at the terminal or refusing to accept intermodal tickets from FMB for refund. The DRBA is a "body politic ... which shall constitute an agency of government of the State of Delaware and the State of New Jersey ... which shall be deemed to exercise essential government functions" such as the "planning ... maintenance, ... and operation of crossings between the States of Delaware and New Jersey across the Delaware River or Bay ... [and] any transportation or terminal facility ... within the State of Delaware or the New Jersey count[y] of Cape May...." *N.J.S.A.* 32:11E–1, art. IV(a) & (b). The DOT's jurisdiction is limited to public utilities which are defined as "every individual, copartnership, association, corporation or joint stock company" which operates "any railroad, street railway, traction railway, autobus, charter bus operation, special bus operation ... subway ... under privileges granted or hereafter to be granted by this State." *N.J.S.A.* 48:2–13. Since the DRBA is not an individual, copartnership, association, corporation or joint stock company, but a bi-state governmental agency, and it operates a ferry, not a railroad or bus route, the DRBA is not a public utility directly regulated by the DOT. It is clear, therefore, that the DOT is without jurisdiction to compel the DRBA to refund FMB for the intermodal tickets accepted by it.

■ Nor does the DOT directly govern the stops on a particular bus route. The DOT grants a certificate of public convenience and necessity for a certain route, and may limit that certificate with respect to the "area of operation, [and] route of operation." *N.J.S.A.* 48:4–3.1. However, there is nothing in the statute that gives the DOT the power to force private or public landowners to

place or continue a bus stop on their land. *Port Auth. Trans–Hudson Corp. v. Baum Bus Co.*, 156 *N.J.Super.* 585, 595–96, 384 *A*.2d 213 (Law Div.1977), *aff'd*, 156 *N.J.Super.* 578, 384 *A*.2d 209 (App.Div.1978). Indeed, municipalities are empowered to control traffic on their streets by designating "stops, stations or stands for omnibuses." *N.J.S.A.* 39:4–197(3)(a). DOT regulations require that in order to receive a certificate of public convenience and necessity, the bus company must show that it has permission from the relevant landowner, whether public or private, for pick-up and drop-off locations. *N.J.A.C.* 16:51–3.1(e).

In *Baum Bus, supra,* 156 *N.J.Super.* at 594–97, 384 *A*.2d 213, the court discussed the role of the Public Utility Commission ("PUC")[3] when a municipality seeks to eliminate bus stops. There, a Jersey City ordinance eliminated ten stops on the defendant bus company's route. *Id.* at 588, 384 *A*.2d 213. The PUC intervened, claiming it was authorized to review and reassess the elimination of the ten bus stops. *Id.* at 595, 384 *A*.2d 213. The court disagreed, finding no statutory or regulatory authority allowing the PUC to review Jersey City's action in eliminating the stops. *Id.* at 596, 384 *A*.2d 213. The DRBA is likewise free to eliminate a bus stop without the interference of the DOT. Although not a municipality, the DRBA's status as a separate body politic that controls the ferry terminal is analogous to the status of a municipality and its control over its streets and other property.

Further, the DOT's determination that it has no jurisdiction over the instant dispute is entitled to considerable weight. "[T]he agency's construction of its enabling act 'will prevail' if not plainly unreasonable." *Muise v. GPU, Inc.,* 332 *N.J.Super.* 140, 158, 753 *A*.2d 116 (App.Div.2000) (quoting *Merin v. Maglaki,* 126 *N.J.* 430, 437, 599 *A*.2d 1256 (1992)). *Accord National Waste*

___

[3] Prior to January 1, 1979, bus routes were regulated by the PUC. Effective January 1, 1979, this function was transferred to the DOT. *See* Reorganization Plan for the Board of Public Utilities and the Department of Transportation—1978 (reprinted after *N.J.S.A.* 48:2–1).

*Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 *N.J.* 209, 228, 695 *A.*2d 1381 (1997).

### III

We reject FMB's assertion that if the DOT has no jurisdiction over this matter, then it is without recourse. Regarding the portions of the proposed amended petition that attack the award of the NJT bus route to Lion, FMB's sole recourse is with NJT. FMB has twice petitioned NJT alleging the NJT route created destructive competition, once in 1996 and again in 1999. NJT dismissed both petitions for reasons unrelated to the issues involved in this appeal. FMB did not appeal either of those rulings to the NJT Board of Directors to obtain a final agency decision, which would then be appealable to this court.

With regard to FMB's allegation that the DRBA improperly prohibited appellant from picking up and discharging passengers at the ferry terminal, FMB's recourse is with the courts, since neither regulatory agency, the DOT nor NJT, have jurisdiction over the matter.[4]

The DOT correctly refused to permit FMB to amend its 1996 petition and correctly dismissed its 2000 petition.

Affirmed.

---

[4] FMB previously filed a Law Division complaint over its contract dispute with the DRBA and the legality of the NJT route, not the DRBA's elimination of FMB's bus stop. Indeed, that Law Division complaint was filed before the DRBA refused FMB permission to enter the ferry terminal.